Decided November 9, 1896.

## JORY v. PALACE DRY GOODS CO.
(46 Pac. 786.)

1. SUFFICIENCY OF DESCRIPTION IN TAX DEED—CODE, § 2773.—The correct interpretation of section 2773, Hill's Code, is that if land is so situated that it cannot be definitely described by legal subdivisions, or by lots and blocks, it must be described in some other manner that will make its location certain. Measured by this rule, a *description* in an assessment roll and in a tax deed as a "fraction of lot 2 in block 49," for example, is so indefinite that it entirely fails to identify any parcel of land whatever, and is absolutely meaningless.

2. RECOVERY OF AMOUNT PAID BY PURCHASER AT TAX SALE—HILL'S CODE, § 2821.—The provision of our code (section 2821) that when the holder of a tax title sues for the land described in his tax deed, the owner *must deposit in court the amount paid for the tax deed*, with interest, etc., as a condition precedent to filing his answer, is supported on the theory that the tax purchaser has acquired the lien of the county for the tax, and that, the purchaser having paid to the county by his purchase a just obligation of the citizen's, the latter ought to repay him before getting the lien released; but where the tax itself is void, or where the assessment is so irregular that it is impossible *to say what property* is intended to be affected by it, no lien is created; and consequently the tax purchaser can acquire none. In such cases the owner need not make any tender with his answer.

From Marion:    GEO. H. BURNETT, Judge.

This is an action by William Jory against the Palace Dry Goods & Shoe Co., to recover possession of the undivided one-half of 22 feet and 7 inches by 165 feet of lot No. 2, block 49, in the City of Salem, Marion County, Oregon, more particularly described as "Beginning at a point 45 feet and 2 inches south of the southeast corner of the building now known as the First National Bank Building, and running thence west, parallel with the south wall of said bank building, 165 feet to the alley; thence north, parallel with the alley, 22 feet and 7 inches; thence on a straight line east to the place of beginning." The complaint is in the usual form. The defendant, after putting in issue the

ownership and right of possession, as a further defense alleges ownership in one R. Livingstone, and that defendant is a tenant under him; that plaintiff's pretended title is based upon a certain tax deed, a copy of which is made a part of the answer. The property attempted to be conveyed thereby is described as "Salem fraction of lot No. 2 in block No. 49. Salem lots Nos. 4, 5, 6 and 7, block No. 49, together with all and singular the tenements," etc. The deed purports to be based upon a sale for delinquent taxes levied upon the property therein described for the year 1890, in the name of W. N. Ladue, from whom R. Livingstone deraigns his title. It is further alleged that Ladue fully paid and discharged all taxes levied upon the premises described in the complaint for the year 1890, long prior to the pretended tax sale. It is admitted by the reply that the answer sets out a correct copy of the tax deed, and that plaintiff claims title by virtue thereof; but the allegation that Ladue paid the taxes for 1890 prior to the sale is denied. The reply further states affirmatively that before the commencement of this action Ladue deeded the premises in controversy to Livingstone, but that the latter had full knowledge and notice of plaintiff's title at the time, and "that plaintiff paid, on the 27th day of June, 1891, the sum of $133 to the sheriff of Marion County, Oregon, as the consideration for such deed, the same being the amount of taxes delinquent against the lands in question herein, but the defendant, or the said Ladue, or said Livingstone, has not paid the same nor any part thereof, nor offered to do so." A motion was interposed by defendant for judgment on the pleadings, dismissing the action, and for costs, which, being sustained, plaintiff appeals, and assigns the action of the court in this regard as error.

AFFIRMED. .

For appellant there was a brief over the signature of

*Messrs. Carson & Fleming,* with an oral argument by *Mr. John A. Carson.*

For respondent there was a brief and an oral argument by *Mr. Geo. G. Bingham.*

MR. JUSTICE WOLVERTON, after stating the facts as above reported, delivered the opinion of the court.

If, from the state of the pleadings, it appears that plaintiff is not entitled to any relief against the defendant, it must be admitted that the motion was properly allowed. Plaintiff's title to the premises in controversy depends entirely upon a tax deed, a copy of which is appended to and made a part of the answer. But, in case of failure of title from that source, he claims the right to recover from defendant the amount of taxes standing delinquent against the premises at the date of such sale, and which constitutes the consideration for the deed. The amount is alleged to be $113.11.

1. It is conceded by the parties that the description of the premises in the notice of sale and deed is correctly copied from the assessment roll for Marion County for the year 1890. The assessor is required, in the preparation of the assessment roll touching landed property, to set down in separate columns, according to the best information he can obtain: "(1) The names of all the taxable persons in his county; (2) a description of each tract or parcel of land to be taxed, specifying under separate heads the township, range, and section in which the land lies, or, if divided into lots and blocks, then the number of the lot and block; (3) the number of acres and parts of an acre, as near as the same can be ascertained, unless the land be divided into blocks and lots; (4) the full cash value of each parcel of land taxed." "If the land assessed be less or other than a

subdivision, according to the United States survey, unless the same be divided into lots and blocks, so that it can be definitely described, it shall be described by giving the boundaries thereof, or in such other manner as to make the description certain": Hill's Code, § 2770, subds. 1, 2, 3, and 4, and § 2773. By § 2823 the sheriff is required to execute to the purchaser "a deed of conveyance reciting or stating a description of the property sold, as described in the assessment roll." All these provisions may be said to be mandatory, and the officers are bound strictly to their observance. It is clear that all land, unless divided into lots and blocks, shall be so designated, either by legal subdivisions or by metes and bounds, as to make the "description certain."

But it is contended that if the land is divided into lots and blocks, then it is sufficient to give the number of the lot and block, whether the property assessed consists of an entire lot or less. If divided into lots and blocks, the acreage may be omitted (Code, § 2770, subd. 3); but, unless it is so divided "that it can be definitely described, it shall be described by giving the boundaries thereof": Code, § 2773. We think the right interpretation of this latter section is that if land is so situated that it cannot be correctly described by legal subdivisions, or by lots and blocks, then it must be described by metes and bounds, or in such other manner as to make the description certain.

The land is described in the assessment roll and the deed as "Salem fraction of lot No. 2, in block No. 49." The property sought to be recovered is an undivided one-half of a part only of said lot, or 22 feet and 7 inches by 165 feet thereof. Does the deed contain such a description as will operate to convey the interest sought to be recovered? The word fraction imports "a fragment; a separate portion; a disconnected part": Century Dictionary. Black,

in his Law Dictionary, defines it as "a fragment or broken part; a portion of a thing less than the whole." The word is used to designate a fragmentary part of a whole, disconnected and distinct within itself, rather than an undivided interest; a several, not a joint, interest. So that, looking to the deed, and finding the premises described as "fraction of lot No. 2," there would be no suggestion that an undivided interest in such lot was intended to be conveyed. But the plaintiff seeks not only to recover an undivided interest, but an undivided interest in a fractional part of the lot, and looks to the deed in support of his title. It cannot be said that the less is included in the greater, as the word "fraction" is an indefinite term, and the idea of an undivided interest is not imparted by its use. The term used is "fraction of lot No. 2," not fractional lot No. 2. The latter would imply a lot of less dimensions than a full lot, but the former is indicative of a part less than the whole. It has been held that the grant of a specific quantity of land, parcel of a larger tract, which fails to locate the quantity so conveyed by a sufficient description, makes the grantee a tenant in common with the grantor: *Schenck* v. *Evoy*, 24 Cal. 110; *Lawrence* v. *Ballou*, 37 Cal. 518. A deed, however, which purports to describe a specific tract, giving the number of acres, and calling it a parcel of a larger tract, the calls of which fail to describe the tract intended to be conveyed or other tract, does not operate even to convey an undivided interest: *Grogan* v. *Vache*, 45 Cal. 610. The deed under consideration does not purport to convey a definite quantity out of a larger tract, neither does it describe any particular parcel of lot No. 2, so that it could not be construed as conveying any interest in such lot, either undivided or several. As it regards ordinary conveyances, the description of the premises sought to be conveyed must be sufficiently definite and certain to enable the land to be identified, otherwise they are void

for uncertainty.  With the deed before us, it is impossible
to ascertain what was meant to be conveyed.  There is an
inexplicable uncertainty in the description, amounting to
a patent ambiguity, and, measured by the rules which
govern in ordinary transfers of title, the deed conveys
nothing:  2 Devlin on Deeds, § 1010; *Williams* v. *Western
Union Ry. Co.*, 50 Wis. 71 (5 N. W. 482).  It is claimed
that greater strictness is required in the description of
land to be conveyed by a tax deed than is the case with
voluntary deeds.  Whether this is so or not, it is clear that
it must be described, and with such accuracy that it can
be ascertained and identified with ordinary and reason-
able certainty:  2 Devlin on Deeds, § 1405.  Such is not
the case here, and the deed cannot be upheld as a transfer
of title.  The description is so vague and indefinite that it
fails to point out any parcel of land, and it is absolutely
impossible, by any rules of construction known to the law,
to apply it to the land which plaintiff seeks to recover, nor
are the defects such as may be cleared up by parol evi-
dence:  See *Johnson* v. *Ashland Lumber Co.*, 52 Wis. 465
(9 N. W. 464); *Larrabee* v. *Hodgkins*, 58 Me. 413; *Ronken-
dorff* v. *Taylor*, 29 U. S. (4 Pet.)  349; *Smith* v. *Blackiston,*
82 Iowa, 242 (47 N. W. 1075); *Brickey* v. *English*, 129 Ill.
646 (22 N. E. 854); *Wilkins* v. *Tourtellott*, 28 Kan. 825;
*Griffin* v. *Creppin*, 60 Me. 270; *Roberts* v. *Deeds*, 57 Iowa,
320 (10 N. W. 740); *Brinson* v. *Lassiter*, 81 Ga. 40 (6 S. E.
464); *People* v. *Flint*, 39 Cal. 670; Black on Tax Titles, § 405.

2.   There being a failure of title, the question remains,
Should the plaintiff recover the amount of taxes paid as
the consideration of the deed?  It is provided by section
2823, Hill's Code, that "in any action, suit, or proceeding
for the recovery of lands sold for taxes, except in cases
where the taxes have been paid, or the land redeemed as
provided by law, the defendant, or party claiming to be
the owner as against the holder of the tax title, must, with

his answer, tender and pay into court the amount of the taxes for the payment of which the lands were sold, together with interest thereon at twenty per centum per annum from the date of the sale to the date of the said tax deed, together with the sheriff's fees for making said certificate and sheriff's deed, and also any taxes the purchaser may have paid on said lands, with interest thereon from the date of payment to the date of filing said answer, for the benefit of the holder of said tax deed, his heirs or assigns, in case said tax title should fail in said action, suit, or proceeding." The proceeding here provided for, or, rather, the remedy established in favor of the purchaser at a tax sale, is supported upon the principle that the purchaser, through the instrumentality of the deed, though irregular and ineffectual to convey title through failure of the proper officers to comply with the statutory regulations touching the assessment of property and collection of taxes, acquires a lien upon the property to the extent of the taxes for the payment of which the land was sold. The sale of real property under the provisions of the assessment laws conveys to the purchaser, subject to redemption, all the estate or interest of the owner: Hill's Code, § 2821. The owner may redeem within two years from the day of sale, by repaying the purchase money with certain interest and costs: Section 2820. But if he does not redeem within that time the sheriff may execute to the purchaser a deed, and thereafter, if the proceedings have been regular and the deed properly executed, the delinquent is without remedy to recover back the property so sold for taxes; but, should the tax title fail, the effect of section 2823 is to permit a redemption notwithstanding the deed. In order to do this, however, he is required to repay the amount of taxes for which the land was sold. In such case the deed of the sheriff conveys to the purchaser the interest of the county in the property, and,

where the title proves defective, a lien is created in favor of the purchaser by indirection, and this by reason of the fact that the delinquent is without remedy except upon the conditions imposed by the statute. There appears to be no direct provision in the statute making taxes a lien upon real property, and it is doubtful whether any such lien exists in this State; but we think the effect of the provisions herein cited is to create a lien in favor of a purchaser from the day of his purchase. That is to say, the county, through the sheriff, transfers to the purchaser its interest in the premises, and, if redemption is had, the purchaser is as much entitled to the amount of the taxes paid, with interest and costs, as the county was entitled to the tax in the first instance. This does no injustice to the taxpayer, for, so long as there is a legitimate tax standing against him, he ought not to be permitted to avoid a tax deed which is without potency to carry the title because of irregularities in the proceedings without first reimbursing the purchaser. So that, if he would relieve himself of the incubus of an insufficient tax deed through the interposition of the courts, he must tender the taxes unless they have been paid or the land redeemed.

But the rule has its limitations, and it is not in every instance where the tax title fails that the land owner is required to tender the taxes paid by the purchaser before he is entitled to recover as against the tax deed. If the tax itself were vicious, or such as the legislature could not lawfully impose upon the person or property, the tender could not be required, as it would result in a lawless exaction, which the state would be without power to compel either directly or indirectly: Cooley on Taxation, 551, 552; *Hart* v. *Henderson*, 17 Mich. 218; *Sinclair* v. *Learned*, 51 Mich. 335 (16 N. W. 672); *Power* v. *Larabee*, 3 N. Dak. 55 (49 N. W. 724, 44 Am. St. Rep. 577); Black on Tax Titles, § 438; *West* v. *Cameron*, 39 Kan. 738 (18

Pac. 894). And it seems that where the description is so vague and indefinite as not to be the means of describing any lands, and therefore insufficient for the purposes of assessment, and the deed is without efficacy for the same reason, the county acquires no interest in the land by virtue of the assessment, and hence cannot create or transfer a lien to the purchaser for the taxes for which the land is sold by a deed which is ineffectual in itself to identify such land. The doctrine of caveat emptor applies to such a purchaser, and he acquires nothing, because the county conveys nothing by its deed. The very corpus involved in the transaction is not identified for any purpose. So, it cannot be said that the county, through the instrumentality of the assessment, sale, and deed, has transferred to or created a lien in favor of the purchaser for the taxes paid. The case contemplated by the statute is analogous to the equitable transfer of a mortgage security to the purchaser at a void judicial sale under an invalid foreclosure proceeding, or the subrogation of the purchaser to the rights of the lien holder. But if the lien is void in the first instance, that is to say, if the property is so imperfectly described as to give no lien, the void judicial sale is without potency for the equitable transfer of a lien to the purchaser, because none ever existed, and the proceeding cannot create one. In support of these views see *Roberts* v. *Deeds*, 57 Iowa, 320 (10 N. W. 740); *Early* v. *Whittingham*, 43 Iowa, 162; and *Powers* v. *Larabee*, 3 N. Dak. 55 (49 N. W. 724, 44 Am. St. Rep. 577). In the present case the land was not sufficiently identified for the purpose of assessment, and the county acquired no lien, even if the statute gives one upon the property for taxes levied upon it or otherwise (Black on Tax Titles, §§ 112, 184; *Jefferson* v. *Whipple*, 71 Mo. 519); and the deed was powerless to transfer such supposed lien to the plaintiff, much less to create one in his favor for the taxes

paid as the purchase price of the premises. Now, it is apparent from what has been said that defendant was not required to tender the amount of the alleged taxes for the payment of which the land was attempted to be sold before he could be permitted to contest the title of plaintiff under his tax deed, hence the issue attempted to be raised by the reply in that regard becomes immaterial. So does the issue raised by a denial of the allegation in the answer to the effect that Ladue paid the taxes for the year 1890, prior to the day of sale. The question then recurs as to whether the deed will support the title which plaintiff alleges that he possesses. We have seen that it will not, hence the motion for judgment on the pleadings was properly allowed.

Other questions are raised by the record touching irregularities in the tax proceedings, sale, and deed, which it is claimed render the tax title void; but, under the view we have taken, they all become immaterial, and for this reason we have refrained from discussing them.

AFFIRMED.