Argued 30 June, decided 20 July, 1903.

## MIDDLETON v. MOORE.

[73 Pac. 16.]

PRECEDENCE BETWEEN TAX LIEN AND PRIOR MORTGAGE.

Under Section 2821 of Hill's Ann. Laws, providing that "a sale of real property conveys to the purchaser all the estate or interest therein of the owner," and section 2823, providing that a tax deed should operate "to convey a legal and equitable title to the purchaser [property?], sold in fee-simple to the grantee named in such deed," a tax deed did not cut off the lien of a mortgage executed before the assessment and levy of the tax, the assessment being against the person, and not specifically against the property, and the manner of collecting the tax being to make it out of the personal property, if such could be found, and, if not, then out of the realty. Under this statute only the interest of the person assessed passed by the deed: *Nickum* v. *Gaston*, 24 Or. 380, and *McNary* v. *Wrightman*, 32 Or. 573, distinguished.

From Multnomah : ALFRED F. SEARS, JR., Judge.

Suit to foreclose a mortgage by J. H. Middleton against F. M. Moore and the Victor Land Company. On July 1, 1893, defendant Moore, being the owner in fee of lot 8, block C, Cherrydale Addition to the City of Portland, mortgaged it to one Wiley, trustee, to secure the payment of four promissory notes of $175 each. On April 19, 1897, Wiley assigned the notes and mortgage to plaintiff. Moore conveyed the lot to the defendant the Victor Land Company, and this suit is for the foreclosure of the mortgage. The land company answered that, on June 6, 1902, being prior to the date of said conveyance, the Sheriff of Multnomah County executed and delivered to it a tax deed to the lot in question, in pursuance of a sheriff's sale of the same to one Allen, for delinquent state, county, school, and Port of Portland taxes for the year 1897, and city taxes for 1898, the said Allen having duly assigned the certificate of sale to defendant ; that at the time of the execution of said deed the lot had not been redeemed from the tax sale, and the defendant is in the actual possession, and prayed that the company be decreed to be the owner in fee simple thereof, devested of the alleged lien of the mortgage. A

demurrer to this answer having been sustained, a decree of foreclosure was entered, and the land company appeals.

AFFIRMED.

For appellant there was an oral argument with a brief by *Mr. Frank Schlegel* to this effect:

I. A tax title cuts off all prior liens under our statute: *Nickum* v. *Gaston*, 24 Or. 380–88 (33 Pac. 671, 35 Pac. 31); Hill's Ann. Laws, § 2823; Blackwell, Tax Titles, pp. 616, 617.

II. An estate in fee simple means a title that takes precedence over liens prior in date created by the act of the owner of the property: *Board of Regents* v. *Linscott*, 30 Kan. 240 (1 Pac. 81–91); *McFadden* v. *Goff*, 32 Kan. 415 (4 Pac. 841); *Robbins* v. *Barron*, 32 Mich. 36; *Peckham* v. *Millikan*, 99 Ind. 352; *Bodertha* v. *Spencer*, 40 Ind. 353; *Isaacs* v. *Decker*, 41 Ind. 410.

III. Under a statute providing that the collector's deed shall convey all the right and interest which the owner had therein at the time when the same was taken for his taxes, a tax deed cuts off prior incumbrances: *Parker* v. *Baxter*, 2 Gray (Mass.), 185; *Doe* v. *Deavors*, 8 Ga. 478–482; *Langley* v. *Chapin*, 134 Mass. 82–88; *In re Douglas*, 41 La. Ann. 765, 770 (6 South. 675); *Maumus* v. *Brynet*, 31 La. Ann. 462.

IV. See, generally, that the tax lien, irrespective of provisions of statute, is superior to prior liens created by act of owner: *Dunlap* v. *Gallitin County*, 15 Ill. 7–9; *Becker* v. *Howard*, 66 N. Y. 5–7; Burroughs, Taxation, 347–48; 25 Am. & Eng. Ency. Law (1 ed.), p. 717.

V. A tax title under provisions same as in Oregon has nothing to do with previous chain of title. It is a breaking up of all previous titles: *Gwynne* v. *Nishwanger*, 20 Ohio, 556; *Jones* v. *Devore*, 8 Ohio St. 430; *Jarvis* v. *Peck*, 19 Wis. 74; *Sayles* v. *Davis*, 22 Wis. 225; *Stafford* v. *Fizer*,

82 Mo. 393; *Gitchell* v. *Kreidler,* 84 Mo. 472; *Myers* v. *Bassett,* 84 Mo. 479; *Allen* v. *McCabe,* 93 Mo. 139; *Williams* v. *Hudson,* 93 Mo. 524.

For respondent there was a brief over the names of *John H. Middleton, in pro. per.,* and *Victor K. Strode.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion.

The issue presented for our consideration is whether, under the law in force in 1897 and 1898, a tax deed cut off the lien of a mortgage executed anterior to the assessment and levy of the tax for the nonpayment of which the mortgaged premises were sold and the deed given. The solution of this question depends entirely upon the statute then in effect, and its proper interpretation. For the purposes of assessment, lands and town lots were required to be valued at their true cash value, taking into consideration the improvements, the quality of the soil, etc., such value being taken to mean the amount such property would sell for at voluntary sale made in the ordinary course of business: Hill's Ann. Laws 1892, § 2752, as amended by Laws 1893, p. 6. The assessment was made by setting down in the assessment roll the names of the taxable persons, the description of each tract or parcel of land, the full cash value of each parcel and of all taxable personal property, and the total value of the whole: Hill's Ann. Laws 1892, § 2770. A transcript of the assessment roll was placed in the hands of the sheriff, accompanied by a warrant commanding him to collect the taxes charged on the list or roll, and to make the same by sale of the goods and chattels of the respective persons named therein, if necessary: Hill's Ann. Laws 1892, § 2794, as amended by Laws 1893, p. 118. If any of the taxes mentioned in the list remained unpaid, either on real or personal property, the sheriff made out a statement and return thereof in

the form designated, to which he annexed his affidavit, to the effect that the sums therein returned were unpaid, and that he was not upon diligent inquiry able to discover any goods or chattels belonging to the persons charged whereon he could levy, whereupon the county clerk made from said delinquent roll a true and correct list of the taxes returned as unpaid, and a correct description of the lands or town lots, and to whom such taxes were charged, and delivered the same, with a warrant attached, to the sheriff, commanding him to levy upon the goods and chattels of such delinquents, and, if none be found, then upon the real property as set forth in the tax list, or so much thereof as might be necessary to satisfy the amount of the taxes so charged. The warrant was deemed an execution against property, and had the force and effect thereof against any person, firm, or corporation against whom such taxes were levied or charged on the roll. If no personal property was found whereon to levy the warrant, or if that levied upon was not sufficient to satisfy the same, it was then levied upon any real property of the person, firm, or corporation against whom the tax was charged, or sufficient thereof to satisfy the same: Hill's Ann. Laws 1892, §§ 2809–2811, 2814–2816. A sale of real property conveyed to the purchaser "all the estate or interest therein of the owner, whether known or unknown, together with all the rights and appurtenances thereto belonging": Section 2821, Hill's Ann. Laws. The owner, or his successor in interest, or any person having a lien by judgment, decree, or mortgage on the property, or any part thereof separately sold, was entitled to redeem the same, and, if no redemption was made within two years, a deed was to be executed thereto, which operated "to convey a legal and equitable title to the purchaser [property], sold in fee-simple to the grantee named in such deed": Section 2823, Hill's Ann. Laws. Any person having a lien by mortgage, or otherwise, upon

any land upon which the taxes were unpaid, was authorized to pay the same, and the receipt of the proper officer, showing the payment, constituted an additional lien upon the premises, which was collectible as a part of the original lien: Hill's Ann. Laws, §§ 2821–2823, 2838.

This cursory statement of the effect of the statute then in force indicates quite clearly the policy of the law for the assessment and levy of taxes and the enforcement of the payment thereof. The assessment was against the person, and not specifically against the property listed. The property was of course the basis of the assessment, and land was made to bear its true cash value. The owner, however, was charged with the tax, and the property was not made primarily or exclusively liable for the payment of its own burden. In other words, the scheme adopted was not a proceeding *in rem*, but rather *in personam*, and the manner of collecting was to make the tax out of the personal property of the taxpayer, if any such could be found, and, when that source was exhausted, to levy the warrant, if the taxes were delinquent, upon sufficient of the realty of the individual to satisfy the same. The "personal property is in the primary fund to which resort must be had for the compulsory payment of taxes" (*Hughes* v. *Linn County*, 37 Or. 111, 117, 60 Pac. 843), and it was only when that was exhausted by the exercise of diligent inquiry that resort could be had to the land. When, finally, the sheriff, in pursuance of a lawful warrant, sold the land, he conveyed to the purchaser, subject to redemption, "all the estate or interest therein of the owner." The pivotal inquiry here, therefore, is, What estate is thus conveyed ? "If," says Mr. Blackwell, in his work on Tax Titles (volume 2, 5 ed. § 954), "the land alone is assessed as the summation of all interests, liens, incumbrances, etc., the general rule is that the deed carries a fee simple absolute, a new and independent title, the land itself being conveyed ; and all prior

liens, incumbrances, and interest in, to, or upon the land, are extinguished." But, "on the other hand," he contines, "where the law requires the land to be listed in the name of the owner of the fee, or of any other interest in the estate, provides for a personal demand of the tax, and, in case of default, authorizes the seizure of the body or goods of the delinquent in satisfaction of the tax, and in terms, or upon a fair construction of the law, permits a sale of the land only when all other remedies have been exhausted, then the sale and conveyance by the officer pass only the interest of him in whose name it was listed, upon whom the demand was made, who had notice of the proceedings, and who alone can be regarded as legally delinquent. In such cases the title is a derivative one, and the tax purchaser can recover in ejectment only such interest as he may prove to have been vested in the defaulter at the time of the assessment."

Mr. Burroughs states the principle thus: "In those states where the land is assessed to the owner, a report is made of his delinquency in paying the tax, and the sale is made by the tax officers in pursuance of such report, and there are no proceedings against the land *in rem.* The purchaser at the tax sale then becomes the owner only of such interest as the person assessed had in the land": Burroughs, Tax'n, § 122. The text of these authorities is supported by numerous adjudications: *City of Nashville* v. *Cowan*, 10 Lea (Tenn.), 209; *Gates* v. *Lawson*, 32 Grat. (Va.) 12; *Dows* v. *Drew*, 27 N. J. Eq. 442; *Blackwell* v. *West Amwell*, 43 N. J. Eq. 165; *Smith* v. *Lewis*, 2 W. Va. 39; *McDonald* v. *Hannah* (C. C.), 51 Fed. 73, 59 Fed. 977 (8 C. C. A. 426). And, while the states of the Union adopting a like policy or scheme for the collection of revenue are greatly in the minority, yet the rule of law governing in the premises has become well established and clearly defined. In *Day* v. *Micou*, 85 U. S. (18 Wall.) 156, it was

held that the federal statute directing a seizure of all the estate and property of certain designated persons did not extend to or cut off the interest of a mortgagee holding a *bona fide* mortgage upon the premises seized thereunder. So, it was said, in *Dows* v. *Drew*, 27 N. J. Eq. 442, that "taxes levied subsequent to the registry of a mortgage do not have priority over it, without express legislation giving them priority." This principle is reasserted in *Blackwell* v. *West Amwell*, 43 N. J. Eq. 165, and applied in *Smith* v. *Lewis*, 2 W. Va. 39, a case of much analogy to the one at bar. Under these authorities, it is quite apparent that neither the tax, nor the deed given in pursuance thereof, cuts off, eradicates, or extinguishes the lien of a prior mortgage.

But, before disposing of the matter finally, we will notice further the forcible argument of counsel for defendant. He insists that the expression, "all the estate or interest therein of the owner," is to be read in the light of subsequent sections of the statute, whereby the owner or his successor in interest, or any person having a lien, by judgment, decree, or mortgage, on the property, or any part thereof separately sold, was authorized to redeem from the sale, and any person having a lien by way of mortgage or otherwise might pay the tax and add it to his own lien, and providing that the deed "shall operate to convey a legal and equitable title to the purchaser [property] sold in fee-simple to the grantee named in such deed," and that, when so read, it signifies the entire or fee-simple estate in the lands sold, devested of all liens and incumbrances of whatsoever nature. A view in the retrospect will explain the situation. By section 72 of the territoral act of January 27, 1854 (Laws 1854–55, p. 446, c. 1, tit. 6), it was provided that the tax deed "shall vest in the grantee an absolute title in fee simple in such lands"; and, by section 77, that "all taxes assessed on any tract or parcel of

land, and all costs, charges, and interest thereon, shall be a lien on such land until paid": Laws 1854–55, p. 447. In the same act (section 80, tit. 7) is the provision for the payment of taxes by the mortgagee or other lienor, and adding it to his lien. By the act of October 21, 1864, the provision touching the effect of a tax deed was entirely eliminated, and so also was the provision making the tax a lien upon the parcel against which it was assessed. We find in this act, however, the first appearance of the provision for redemption by the owner or a lienor from the effect of the sale (Gen. Laws 1845–1864; Deady, p. 893, c. 53, relative to the assessment and collection of taxes), and it was much later (February 21, 1887, Laws 1887, p. 89), that it was provided that the deed "shall operate to convey a legal and equitable title," etc. This clause in its present shape is not intelligible, but it is probable that the word "purchaser" is a misprint of "property." At any rate, it is of but little value in determining the proper meaning of the other clauses of the statute alluded to. By the act of 1864 the legislature undeniably intended to inaugurate a radical change in the tax system by foregoing any lien for the taxes assessed, and selling only the estate or interest of the owner in the process of the enforcement of the tax. The same policy prevailed until the act of 1901, with which we have nothing to do. A tax lien can only exist by force and operation of the statute (25 Am. & Eng. Ency. Law, 1 ed., 267; Black, Tax Titles, 2 ed. § 182), the question usually raised in the adjudicated cases being whether enactments are effective for the purpose. But by eliminating the provision for a lien, and declaring that the effect of the sale shall be, not "to vest an absolute title in fee-simple," but to convey the estate or interest of the owner, the policy of the legislature is well indicated that the derivative title to the realty only is subjected to sale for the enforcement of delinquent taxes. The sale and conveyance

in the present instance, therefore, did not operate to cut off or deprive plaintiff of his mortgage lien. The defendant land company became the owner of the equity of redemption, and was a necessary party to the proceedings to foreclose. By reason of having purchased at a tax sale, the purchaser acquired a lien which could not be devested, short of making him a party to the foreclosure, unless there be a redemption. But no lien existed for the tax prior thereto. When, however, the sale ripened into a tax title, the grantee acquired the interest of the owner. In this case such interest was the equity of redemption, and the land company occupies the shoes of the owner upon the foreclosure of the prior mortgage.

Some stress is laid upon section 2818, as indicating a purpose to deal with the fee-simple title. Whatever may be the purpose of that section, it contemplates the issuance of a special warrant upon the order of the county court, but the sale in this instance was not had by virtue of such a warrant.

In our consideration of the cause, we have not overlooked the cases of *Nickum* v. *Gaston*, 24 Or. 380 (33 Pac. 671, 35 Pac. 31), and *McNary* v. *Wrightman*, 32 Or. 573 (52 Pac. 510). But in neither of them was the question here involved determined. In the former, the case seems to have been presented upon the assumption by both parties that the tax sale and deed would cut off the lien of the prior mortgage, and what was said by the court must be read in the light of the legal issue involved. The latter case holds that a lienor may pay the tax separately assessed upon a specific parcel of realty, and thereby prevent a sale thereof for the general tax assessed upon all the property of the taxpayer. Mr. Chief Justice MOORE, in his discussion of the effect of Section 2838, Hill's Ann. Laws, 1892, says: "This would seem to imply that, as to a mortgagee or other lienor, the tax was not a general, but, at most, a

specific, charge upon the particular real estate only upon which it was levied." In deciding, however, that the tax is a charge, in the sense that the lienor must pay it if he would avoid a sale for the general tax of the owner, it is nowhere asserted or decided that it is a lien paramount to the mortgage. The case but serves to elucidate the utility of the section, without giving it the effect of requiring the lienor at all hazards to pay the tax and add it to his lien, or be deprived of his remedy for its enforcement. Let the decree of the circuit court be affirmed.        AFFIRMED.