Argued 10 April, decided 17 October, 1904.

## BERGER *v.* MULTNOMAH COUNTY.

[78 Pac. 224.]

EFFECT OF TAX-SALE PURCHASE BY COUNTY — SUBSEQUENT SALE.

1. Under the scheme of assessment and taxation existing in Oregon prior to 1901, by which only such interest in lands was assessed as the taxpayer had in the realty at the time of listing, and under Laws 1893, p. 28, authorizing counties, on sales of land for taxes, to ·bid the amount of taxes and costs, and declaring that, if no better bid was made, the land should be sold to and become the property of the county, subject to redemption as provided by law, the counties acquired a lien on the lands thus sold which was not affected by subsequent sales to other purchasers under later assessments. Later sales do not cut off rights acquired under prior sales.

TITLE CONVEYED BY TAX DEED UNDER SECTION 3127, B. & C. COMP.

2. A tax-sale purchaser receiving a tax deed under Section 3127, B. & C. Comp. which provides that tax deeds shall vest in the purchaser all the rights of the former owner, owners, lienholders, claimants, or other persons interested in the land, and also the rights and claims of the State and county, does not thereby, acquire the lien theretofore obtained by the county under purchases at tax sales, because the assessment made after the tax-sale purchases by the county was on such interest only as the owner had, and the legislature could not declare that the deed should convey a greater interest than was involved in the tax proceeding. Such a declaration would result in depriving property owners of the fee of their land without any process of law whatever.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE WOLVERTON.

The plaintiff, Henry Berger, claiming title to certain real property under tax deeds bearing date December 24, 1902, executed in pursuance of sales for delinquent taxes assessed and levied for the year 1899, seeks by this proceeding to restrain Multnomah County from selling or otherwise disposing of the property involved, and to remove as a cloud upon plaintiff's title all claim of any interest therein by the county arising by virtue of its having previous to plaintiff's purchases bid in the property upon sales for taxes theretofore assessed against the same. The sales under which plaintiff claims title took place on December 12, 1900, for the taxes of 1899, and those under which the defendant county claims an interest as follows: May 5, 1899, for taxes assessed for the year 1891; May 9, 1899, for taxes for 1892; May 11, 1899, for taxes for 1893; May 12, 1899, for taxes for 1894; May 13, 1899, for taxes for 1895; August 30, 1899, for taxes for 1897; December 12, 1899, for taxes for 1898. Beyond this, the property was reported by the sheriff as unsold for the taxes assessed for the year 1896. As a ground for the relief sought it is alleged that the county and the sheriff thereof are threatening and are about to sell and dispose of said real property for the taxes assessed for the several years last named. The decree of the trial court was favorable to plaintiff, and defendants appeal.        REVERSED.

For appellant there was a brief over the names of *John Manning*, District Attorney, and *Arthur C. Spencer*, with an oral argument by *Mr. Spencer*.

For respondent there was a brief over the names of *Gantenbein & Veazie* and *Geo. W. Caldwell*, with an oral argument by *Mr. Arthur L. Veazie*.

MR. JUSTICE WOLVERTON delivered the opinion.

1. The most vital question involved by the appeal is

whether the county, by the sheriff's sales under which the plaintiff claims title, and the deeds issued in pursuance thereof, no redemption having been had in the mean while, is precluded from disposing of the property with a view to realizing taxes assessed in previous years for the nonpayment of which it was sold to the county. Counsel for plaintiff strenuously affirm that it is. Upon the other hand, it is contended that the sales and deeds to plaintiff, if regular, were effective to convey only such interest as the delinquent taxpayers had at the time they were assessed, and that such interest was subject to the burden of the prior taxes designated, and therefore that the plaintiff purchased subject to the claim of the county for all such unpaid taxes. It has been recently determined by this court that under the scheme of assessment and taxation existing in this State prior to 1901, such interest only was assessed as the taxpayer had in the realty at the time of listing — that is, such as is known in the books as the "derivative title"— and not the land primarily, as the summation of all interests of whatsoever nature pertaining thereto, and that a sale for delinquent taxes thereunder, and the deed following in due course, did not cast a fee simple absolute, or new and independent title, divested of all previous incumbrances or limitations, but operated to convey the delinquent's title only, carrying to the purchaser all his interest or estate therein, subject to the burdens and incumbrances previously contracted and suffered by the rightful owner: *Middleton* v. *Moore*, 43 Or. 357 (73 Pac. 16). The reasons that impelled the holding are so fully set forth in our decision of that case that it is unnecessary to elaborate upon them further at the present time. The case has since been followed in *Ferguson* v. *Kaboth*, 43 Or. 414 (72 Pac. 200, 74 Pac. 466). In 1893, the legislature empowered the county judge of each county in the State to bid for and in behalf of the county upon legal

sale of land for taxes the amount of the taxes and costs that may have been charged against such land, or each parcel thereof, and provided that, if there was no higher or better bidder, such land should be "sold to and become the property of the county, * * subject to redemption as provided by law": Laws 1893, p. 28. It was under this enactment that the county bid in and purchased the property here involved. This act was amended in 1901, whereby it was provided that redemption might be made from any such sales thereafter or theretofore made to counties on the terms and within the time provided by law at the time of the sale for redemption of lands sold for taxes to private purchasers, and, if no redemption should be made, title to the land so sold should vest in the county, without issuance of deed or other formality: Laws 1901, p. 71. By other sections of the amendatory act it was further provided that the lands theretofore bid in by the counties might be redeemed at any time before July 1, 1901, on payment of the taxes and all costs charged on the rolls against the lands, without other penalty, but that the sheriffs of the several counties in the State should on said date sell all lands not so redeemed to which the title had been acquired in the manner designated, and that thereupon as soon as practicable he should execute a deed to the purchaser, which should have the effect to vest in him the fee simple thereto.

It is not very clear what was the intendment of the act of 1893 as to conveying the title of the delinquent to the county *ipso facto* upon the expiration of the time for redemption without the necessity of the deed from the sheriff, but it is manifest from the subsequent act that the legislature did not consider that such was its force and effect, because it seemed to think it necessary to declare in positive terms that the title, in case no redemption was had in accordance with the law in force at the time of

sale, should vest in the county without the issuance of a deed or other formality. Besides it treated the lands theretofore sold to the counties as still redeemable by extending the time to a day certain for their redemption. These later expressions carry the impress that it was the purpose of the legislature to place its own interpretation upon the prior act, and to put its true and final meaning beyond cavil, and define and settle intervening rights accruing by virtue thereof. The assessors of Multnomah County must have so understood it, for it appears that they have invariably assessed the property to the individual whose property had been sold for taxes, even though the time for redemption on the sales had in the earlier instances expired. If the tax sales had become absolute at the expiration of the time for redemption, then the property could not have been further assessed at all, it being the property of the county ; but the assessing officers did not so treat it. Neither did the county, as it made no attempt to dispose of it, or otherwise claim it as owner, until the legislature by the later act authorized the sheriff to sell the same after the delinquents were accorded further time for redemption. The sheriff is now further authorized, under section 6 of the later act, to offer for sale on the first Monday in July of each year, in like manner as he was required to offer lands theretofore unredeemed on the first day of July, 1901, all lands to which the county shall have acquired title during the preceding year by virtue of purchase at tax sales, upon which the period of redemption has expired. Thus we find that the purchase by the counties prior to the act of 1901 was intended as a step in the process of collection of taxes, and that the counties did not thereby acquire the title after the time for redemption had expired, but, as the legislature has itself subsequently elucidated and defined, held the lands notwithstanding subject to redemption by the taxpayer. It follows, there-

fore, if subject to redemption, that all such lands were properly assessable to the owner until his title had been divested under and by virtue of the provisions of the act of 1901. The titles to none of the lands in question were so divested.

Now, what was the effect of the sales to plaintiff under a subsequent assessment and deeds acquired by virtue thereof upon the prior sales to the county? Did they cut off or eradicate all interest of the county acquired by its purchases, or operate to preclude it in any way from asserting the rights theretofore acquired? We are impressed that they did neither. By bidding in the property at the sheriff's sales the county acquired a lien thereon, whatever might have been the status as to the tax being a lien upon the land prior to its sale. The effect of the provisions of the statute then subsisting was to create a lien in favor of the county from the day of its purchases. This has been determined in *Jory* v. *Palace Dry Goods Co.* 30 Or. 196, 203 (46 Pac. 786). Such being the case, plaintiff's legal position is this : He purchased the delinquents' derivative titles — that is, such titles as they had in the property — subject to the liens of the county for the prior taxes, which in no way operates to estop the county from enforcing such liens. Such is the logical, and we may say the inevitable, result of the doctrine of *Middleton* v. *Moore*, 43 Or. 357 (73 Pac. 16), which is clearly applicable here. The county was not authorized, by virtue of its purchases, or the liens thereby acquired, to redeem from the tax sales under which plaintiff claims title ; nor could it prevent the sales by the sheriff to plaintiff, that being a duty enjoined upon that officer, and beyond the control of the county ; so that, unless the liens were effective for the county's recoupment, it must lose the prior taxes altogether. But the sales to plaintiff were subject to these liens, which does justice to the county, and works no in-

justice to the individual. In further support of this conclusion, see *People ex rel.* v. *City of Buffalo*, 68 N. Y. Supp. 409, 71 N. Y. Supp. 1145 (63 App. Div. 563). This case is instructive, and of strong analogy to the one at bar. See, also, *Dennison* v. *City of Keokuk*, 45 Iowa, 266. Where no such lien has been created by a sale and purchase, it would also seem logically to follow that a tax title acquired under a later assessment would stand divested of any incumbrance by virtue of the subsistence of a prior tax, and that upon the ground that the tax itself, without else, was not made by the statute a lien upon the property.

Of the cases relied upon by plaintiff's counsel to establish an estoppel against the county, those from Pennsylvania proceed upon the principle that the sale creates a new and independent title in fee, paramount to any existing estate, and that the county commissioners, having acquired such an estate by purchase at a tax sale, would, by subsequently permitting the land to be assessed and sold for taxes accruing, be estopped from claiming title as against subsequent purchasers — a consequence that would seem naturally to follow from the very ground plan of the scheme of assessment: *Hunter* v. *Albright*, 5 Watts & S. 423; *Diamond Coal Co.* v. *Fisher*, 19 Pa. 267; *Schreiber* v. *Moynihan*, 197 Pa. 578 (47 Atl. 851); *Feltz* v. *Natalie Coal Co.* 203 Pa. 166 (52 Atl. 82). So the case of *Murphy* v. *Packer*, 152 U. S. 398 (14 Sup. Ct. 636), and other cases cited, are based upon like principle, except *Clyburn* v. *McLaughlin*, 106 Mo. 521 (17 S. W. 692, 27 Am. St. Rep. 369), which rests upon the principle that the owner received the surplus for which the land sold above the tax having knowledge of all the attending conditions at the time, and *Law* v. *People*, 116 Ill. 244 (4 N. E. 845), which holds that by not including all the taxes due in a judgment the State abandons such as were omitted. None of these cases has

application here under the scheme of assessment existing prior to 1901.

2. Another question made is that under Section 3127, B. & C. Comp., a deed made in pursuance of a sale for taxes prior to its adoption vests in the purchaser all the right, title, interest, and claim of the state and county, as well as of the former owner or owners, lienholders, claimants, etc., and that by reason thereof the county has been deprived of all its prior acquired interest in the premises involved. It is doubtful if such was the intendment of the legislature in the adoption of section 3127, in view of the act of 1901, heretofore discussed, passed at the same session, authorizing the counties to dispose of land theretofore purchased at tax sales on July 1, 1901. But, whatever may be the true interpretation of the section as to that, it is plain that the legislature could not authorize the sheriff or tax collector to convey by deed a larger estate than such as was sold at the tax sale. Such a law would operate to take from the county a vested interest, and confer it upon the plaintiff, who never acquired any right thereto, but purchased, considering the statute then in vogue, expressly subject to such interest, and would therefore be without constitutional warrant. The principle has the sanction of this court in *Ferguson* v. *Kaboth,* 43 Or. 414 (73 Pac. 200, 74 Pac. 466), and is inimical to plaintiff's contention here.

It follows from these considerations that the county is not precluded from disposing of the property bid in by it at the tax sales previous to plaintiff's purchases, but the sheriff may not offer the land for sale again for the taxes of 1896. The decree of the trial court will therefore be reversed, the demurrer sustained, and the cause remanded for such further proceedings as may seem proper.

REVERSED.