Argued at Pendleton November 3, 1937; affirmed February 8;
rehearing denied June 28, 1938

# FEEHELY *v.* ROGERS

(76 P. (2d) 287, 80 P. (2d) 717)

Department 1.

*George A. Pipes* and *Charles S. Cohn*, both of Portland, for appellant.

*Moe M. Tonkon*, of Portland (Teunis J. Wyers, of Hood River, on the brief), for respondent.

*John Baker*, District Attorney, of Hood River; *Earl A. Nott*, District Attorney, of McMinnville; *Fred A. Miller*, District Attorney, of Oregon City; and *G. Russell Morgan*, District Attorney, of Hillsboro, amici curiae.

ROSSMAN, J. Appellant's brief states: "There is no bill of exceptions and the record presented to this court consists of the findings of fact and conclusions of law and the judgment. The facts are agreed to." We shall now state them briefly.

June 18, 1932, Hood River County, as owner and vendor, and the plaintiff, as vendee, signed a contract which bound the latter to purchase the real property

involved in this action for a consideration of $1,200, payable $240 upon execution of the contract and the balance, together with 6 per cent interest, in equal annual installments of $240 each. The agreement required the plaintiff to pay promptly taxes and other charges thereafter assessed against the property. The contract, which refers to the county as party of the first part and to the plaintiff as party of the second part, contains the following provision:

"The Party of the Second Part shall have the right to the possession of, and to income from said premises so long as he shall not be in default of his covenants herein set forth. * * *

"If the Party of the Second Part shall pay the purchase price, principal and interest as herein provided, and shall perform his covenants herein set forth, then the Party of the First Part will execute a deed conveying said premises to the Party of the Second Part, his heirs or assigns; but if the Party of the Second Part shall fail to make any of said payments or shall violate any of his said covenants, he shall forfeit his rights under this agreement, including all payments made pursuant hereto, and Party of the First Part may at its option terminate this agreement and all of the rights of the Party of the Second Part hereunder."

Time was not made of the essence of the contract— at least, not expressly. The land was formerly owned by the defendant who had lost it to the county through his failure to pay the taxes.

The foregoing contract was effected pursuant to 1931 Session Laws, Chapter 220, section 1, subdivision c, of which follows:

"All sales so made under the provisions of this act shall be to the highest and best bidder for cash or for not less than twenty per cent (20%) of the purchase price in cash, the remainder to be paid under written agreement with the purchaser in equal instal-

ments over a term not exceeding ten (10) years from the date of sale, all deferred payments to bear interest from the date of sale at the rate of six per cent (6%) per annum, payable annually. The purchaser shall have a right to the possession and to the income from said premises so long as he shall not be in default in the performance of his agreement with the county court, but shall forfeit his rights under such agreement and to all payments made pursuant thereto, if he shall fail to pay said purchase price or any part thereof, principal or interest, or shall fail to pay, when due, the taxes thereafter levied against said premises, or shall commit or suffer any strip or waste on such premises, which provisions for forfeiture, and such other provisions as the county court may see fit to make, shall be incorporated in said written agreement. But one copy of such agreement shall be executed, and it shall be filed with and retained by the county clerk, but shall not be placed of record.''

The plaintiff discharged the payment of $240, payable concurrently with the execution of the contract, but made no other payments. However, on December 14, 1935, she paid $2.88 taxes assessed upon the property for the year 1932, and $17.88 assessed for the next year. The taxes of $138.83 for 1935 and $155.60 for 1936 were not paid.

According to the findings, the plaintiff took possession of the property upon signing the contract and during her occupancy made ''considerable improvements'' entailing the expenditure of a ''considerable sum of money''. The reply, after describing these improvements, alleges: ''The assessment upon the County Assessor's Records for Hood River County, from no assessment upon improvements in the year 1933, increased to an assessment of $4,500 upon the improvements in the year 1935.'' It will be observed from the facts mentioned in the preceding paragraph

that the taxes increased from $17.88 in 1933 to $138.83 in 1935. We assume that this increase was due to the improvements made by the plaintiff.

The findings state: "On April 9, 1935, without any notice to the plaintiff, or anyone in her behalf, the County Court of Hood River County, Oregon, made and entered an order as follows:   *   *   *." Here follows a copy of the order which, after stating that the plaintiff had defaulted in discharging her payments, recites: "Now, therefore, it is hereby considered and ordered that said contract be annulled and the amount paid thereon forfeited to the county." The order next stated that Homer Rogers, who later was made defendant in the present action, had offered to purchase the property for the sum of $1,200, and then declared: "It is hereby ordered that said premises above described be sold to Homer A. Rogers for said price of $1,200, payable $240 cash, the balance to be paid in equal installments, together with interest, as by law provided." The findings declare that April 9, 1936, the contract, authorized by the language just quoted, was signed, and that on the same day the defendant, without notice to the plaintiff, took possession and has held it ever since, notwithstanding the plaintiff's demands that she be restored to possession. Continuing, the findings state: "Subsequent to the commencement of this cause, and on October 23, 1936, plaintiff tendered the full amount due under the terms of said agreement between her and Hood River County to Hood River County, and that Hood River County refused to accept said tender."

The plaintiff contends that although she failed to discharge the payments demanded by the contract of purchase, nevertheless, the order made by the county

court was void because the county had given her no notice of its intention to cancel the contract. The defendant contends that the statute from which we quoted requires no notice, and his brief states: ''The question primarily involved is whether the statute governing sale of tax lands by counties and the contract made with respondent in pursuance thereof, requires the county to give notice of forfeiture.''

The defendant submits that the sale by a county of land which it acquired for delinquent taxes is a step in the process of tax collection, and that therefore the act of the county court in contracting for the sale of the land was the exercise of a governmental function. Next, he submits that the covenants which the contract imposed upon the county are not to be interpreted as if the vendor were an individual, but that all of its covenants are subject to the statute, the provisions of which are the measure of the county court's authority. He directs attention to the fact that the statute does not directly require notice to a defaulting vendee, and insists that if the option clause contained in the contract is valid it must be construed ''not to require notice of forfeiture but only as an option to declare a forfeiture''. The subject matter of the contract and the circumstances surrounding its execution, according to the defendant, made time of the essence. He argues that the time provisions of the statute are mandatory and that punctual payments of the installments could not be waived by the county's officers.

In *Crossen v. Wasco County,* 10 Or. 111, the decision, in referring to the county court's relationship to the general financial affairs of the county, stated:

''The county court acts merely as the fiscal agent of the county, and in performing that duty, it acts pre-

cisely as would the agent of a private corporation.
* * *"

In *Frankl v. Bailey,* 31 Or. 285 (50 P. 186), a claimant had presented to the county a claim for $1,150 for services rendered it. The county disputed the amount, but finally a compromise was effected whereby both agreed that the claim should be settled for $800. The decision held that under the circumstances the county court "in effecting the alleged compromise was acting in the capacity of fiscal agent of the county". In *Multnomah County v. Title Guarantee & Trust Company,* 46 Or. 523 (80 P. 409), taxes assessed against property owned by one P. A. Marquam had become delinquent and the county had conducted proceedings under a warrant for the collection of the taxes terminating in a sale at which the county became purchaser. The taxes, penalties, costs, etc., amounted to $25,000. In a suit instituted by the Title Guarantee & Trust Company, successor in interest to Marquam, to quiet title to the property, the county answered, setting up the tax proceedings and its purchase of the property. The decree was in its favor and the trust company appealed. The defendant Ross, who, in the meantime, had succeeded to the title to the property, then made the board of county commissioners a compromise offer which was accepted. Pursuant to it, Ross paid the county $15,774.53 together with costs, the county satisfied all of its claims against the property and Ross dismissed his appeal. Two and one-half years later the county commissioners made an order rescinding the compromise settlement and the county instituted the suit under review for the purpose of annulling the compromise agreement. It contended that the commissioners had no authority to enter into the agreement.

From a decree in its favor, Ross appealed. In reversing that decree, the decision of this court declared:

"County commissioners, in transacting the business of the county, and in the care and management of its property and funds, do not act as a court, but as a financial or managing agent of the county, precisely as an agent of a private corporation in the management of its financial concerns, and all contracts made by them within the power conferred are subject to the same rules. * * *

"It is also contended that the board of county commissioners had no authority to make any compromise in regard to the tax certificates, because they included taxes of other corporations—notably, the city of Portland, the Port of Portland, and the school district. The law of 1893 authorizing the county judge to buy in property at delinquent tax sales, declares that when so purchased it will become the property of the county, subject to redemption as provided by law. By such a purchase the county acquires an interest in or liens upon the property for the taxes assessed against it (Berger v. Multnomah County, 45 Or. 402, 78 P. 224) and we think it holds the same in trust to account to the other interested corporations for their proportions or shares of the taxes realized therefrom. The ownership of the interest and lien acquired by the purchase is, however, entirely vested in the county, and any disposition made of it or any redemption is placed exclusively under its control. This is a rational view of the act of 1893, and is the one given it by the subsequent act of 1901, which it was held in Berger v. Multnomah County, 45 Or. 402, 78 P. 224, was an important aid in ascertaining the intention of the legislature in the passage of the former act."

In *West v. Coos County*, 115 Or. 409 (237 P. 961, 40 A. L. R. 1362), the facts were that the plaintiff and the defendant county had entered into a contract which employed the plaintiff to secure payment from the federal government of sums of money due Coos county. Doug-

las county had a similar claim. The contract required Coos county to pay such sum as compensation for the plaintiff's services as the county judges of those counties would fix after the services had been performed. In sustaining the validity of this contract, the decision stated:

"A county has a dual character: (1) it is a governmental agency of its principal, the state, and as such agent it has strictly limited powers. (2) It is a body corporate with power to contract, including the power to contract for the employment of an attorney, and as such is suable without its consent in contradistinction to the state: [authorities]

"In the adjustment or settlement of taxes a County Court, sitting for the transaction of county business, acts not in a judicial capacity, but as the fiscal and managing agent of the county, precisely as an agent of a private corporation might."

*Jackson County v. Ulrich,* 118 Or. 47 (244 P. 535), was an appeal by a taxpayer from a decree which foreclosed some tax assessments against his property. His answer set forth a dispute concerning the amount of the tax, resulting in a compromise agreement that the county should accept $100 as the amount due, and followed by payment of that amount. In holding that the county's demurrer to the answer was erroneously sustained, this court stated:

"There was a grave legal question in regard to the validity of the tax. Under the circumstances delineated in the record, and in order to endeavor to prevent litigation against the county, which must, if the facts stated in the affidavit filed with the County Court and in the answer herein are true, eventually result adversely to the county, the County Court sitting for the transaction of county business, had the power and authority to settle the controversy and compromise the matter in the interest of the county. Such action in regard to an ap-

parent tax would fairly come within the 'general care and management of the county property funds and business,' especially when this clause is considered in connection with the other provisions of the statute, providing, in effect, that the County Court sitting for the transaction of county business shall have control and direct the business and litigation of the county. * * *

"The members of the County Court in performing such functions act in a similar capacity as a board of directors, or managing agents of the corporation."

The statute previously quoted, besides directing that its provisions concerning the terms of the contract shall be incorporated in the latter, authorizes the county court to include "such other provisions as the county court may see fit to make". The county court, apparently in an attempt to exercise this discretionary power, incorporated in the contract the clause which provides that if the purchaser fail to perform his covenants the county "may at its option terminate this agreement and all of the rights of the party of the second part hereunder". Thus, it relinquished the right to an automatic forfeiture which the statute might otherwise have rendered available, and subjected itself to the duty to give notice before declaring a forfeiture. We cannot subscribe to the defendant's contention that this clause merely conferred the privilege of declaring a forfeiture without notice.

Section 28-1004, Oregon Code 1930, defines generally the authority of county courts. Subdivisions 9 and 10 of that law were in effect when all of the decisions above reviewed were announced, and grant county courts authority

"(9) To have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide;

"(10) To compound for, or release in whole or in part, any debt or damages arising out of contract due the county, and for the sole use thereof, upon such terms as may be just and equitable."

It will be observed from the above excerpts of our previous decisions that when the county court sold the land to the plaintiff, negotiated the written contract, and supervised its performance, it was acting as the fiscal, financial or managing agent of the county; to borrow from *Frankl v. Bailey,* supra, its authority was that of "an agent of a private corporation in the management of its financial concerns". It will further be observed that all contracts made by the county courts while acting in that capacity are to be interpreted the same as contracts of individuals.

The clause under attack which required the county court to give notice before declaring a forfeiture does not differ from provisions frequently found in similar contracts of individuals. Very likely its inclusion in the present contract was rendered necessary by the fact that counties and municipalities, as is well known, possess hundreds of items of property obtained through tax proceedings which they find it difficult to sell. It is our belief that this provision is not at variance with any provision of the statute and that its inclusion in the contract is within the authority conferred by the statute.

The evidence is not before us and no circumstance is disclosed by the record which indicates that time was of the essence.

Under the circumstances the contract did not automatically work a forfeiture. Forfeiture was available only at the option of the county and after reasonable notice had been given to the plaintiff: *Holland v. Bradley,* 140 Or. 258 (12 P. (2d) 1100); *Epplett v. Empire*

*Inv. Co., Inc.,* 99 Or. 533 (194 P. 461, 700) ; *Kemmerer v. Title & Trust Co.,* 90 Or. 137 (175 P. 865); *Scott v. Smith,* 58 Or. 591 (115 P. 969) ; *Higginbotham v. Frock,* 48 Or. 129 (83 P. 536, 120 Am. St. Rep. 796) ; *Frink v. Thomas,* 20 Or. 265 (25 P. 717, 12 L. R. A. 239) ; *Knott v. Stevens,* 5 Or. 235.

We have not discussed herein the authorities from other jurisdictions mentioned in the defendant's brief since we are of the opinion that our own decisions dispose of every contention advanced by him. We have, however, studied them carefully.

It follows from the above that the judgment of the circuit court is affirmed.

BEAN, C. J., and KELLY and BELT, JJ., concur.

---

Petition for rehearing denied June 28, 1938

ON PETITION FOR REHEARING

(80 P. (2d) 717)

ROSSMAN, J.   A petition for a rehearing filed by the defendant presents the three following contentions. We quote from the petition:

"An action of ejectment cannot be maintained upon a title which is merely equitable.   *   *   *

"The court erred in holding that the county court of Hood River county, Oregon, had authority to waive the forfeiture provisions contained in section I, subd. c. of chapter 220, Laws of Oregon for 1931.   *   *   *

"In no event is this plaintiff entitled to maintain this action at law in ejectment to recover possession of the land in question, as she failed to plead or prove that she had complied with the conditions of her contract at the time such action was commenced."

The second and third propositions are chiefly repetitions of others argued in the original briefs. Although we gave them very careful consideration before writing our original decision, we have again considered them. We remain satisfied, however, with the disposition made of them in our original decision.

■ In the original briefs there was no contention that, since the plaintiff was not the owner of the fee, she could not maintain this action. Although it was apparent upon the face of the complaint that the plaintiff's interest in the land was equitable, the defendant did not, by either demurrer or motion, challenge that interest as the basis of an action for ejectment; nor did the defendant by an objection to the testimony raise the contention that the plaintiff's equitable interest rendered it impossible for her to maintain an action for ejectment. The very first words of the appellant's (defendant's) brief filed in this court are: "This is an action in ejectment." It is evident that the case was tried in the circuit court upon the theory that the pleadings were sufficient as the basis for an action of ejectment and that the appellant so deemed them in this court up to the time he filed the present petition. That being true, we are compelled to presume that the pleadings are sufficient: 3 Am. Jur., Appeal and Error, p. 74, § 317.

■■ The first mention of the present contention is contained in the petition for a rehearing. When an objection which pertains exclusively to the remedy is so long postponed, it is evident that the basis of the objection has not inconvenienced the course of the cause through the courts. From 3 Am. Jur., Appeal and Error, p. 62, § 289, we quote:

"The rule seems to be that an objection based upon a defect or imperfection in the plaintiff's title to the

property which is the subject of the litigation comes too late for a consideration on appeal or review when not made until after a trial on the merits.''

Section 5-102, Oregon Code 1930, provides:

''Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law.''

Section 5-104 follows:

''The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same   *   *   *.''

In *Weatherford v. McKay*, 59 Or. 558 (117 P. 969), the plaintiff, who had made a homestead entry upon public lands, had received his final certificate but not a patent, yet it was held that he could maintain an action of ejectment against another who was seeking to make an entry upon the same land. The decision cited *Keith v. Cheeny*, 1 Or. 285, where a similar result was reached, and, after mentioning the common law rule which required legal title as the basis for an action of ejectment, stated:

''This ancient rule has been changed in some states by statute, and in others by judicial interpretation, so as to permit an action of ejectment to be supported upon proof of a plaintiff's equitable estate in land, when the evidence showed that he had a right to the immediate possession of the premises. Warvelle, Ejectment, § 235.''

In *Kingsley v. United Rys. Co.*, 66 Or. 50 (133 P. 785), the preliminary statement prepared by Mr. Justice McNARY, states: ''This is an action of ejectment.''

The legal title to the property involved in that action was vested in one A. L. Mills, who was not a party to the cause. The plaintiff alleged that in April, 1906, Mills executed and delivered to the plaintiff a bond for a deed for the property and that later the defendant entered upon the property, without right or title thereto, and ousted the plaintiff therefrom. The defendant's answer denied those averments and alleged that its entry was by virtue of an agreement with the plaintiff whereby the latter donated to the defendant a perpetual right of way across the property. The verdict was for the plaintiff. It will be observed that the plaintiff's bond for a deed conveyed no different estate in the property than the contract held by our present plaintiff. In affirming the judgment for the plaintiff, the decision, written by Mr. Justice McNary, first quoted § 325, L. O. L., which is now § 5-102, Oregon Code 1930, being the statute upon which our present plaintiff relies. The decision then stated:

"It will be observed by the terms of the contract of sale that plaintiff had an equitable estate in the premises, and, when placed in the possession thereof by the legal owner, was endowed with the legal right to repel an invading attack of a mere intruder, and, possessing such right, he had a sufficient interest or estate in the land to support an action of ejectment.

"It is an undisputed rule of law that naked possession vests a sufficient right of property in the person who has such possession as to permit him to hold the land against all the world except the true owner. Consequently actual occupation or possession of real property is in its essential nature of an estate or right therein: Wilson v. Fine (D. C.), 38 Fed. 789. Even were the plaintiff a trespasser relatively to the owner of the legal estate in the premises, he would, while in possession, be owner of the land relatively to the defendant railway corporation.

"In this state the rule has become fixed that possession is a sufficient interest in land to enable one ousted therefrom to eject a trespasser or one unable to show a better title: Gallagher v. Kelliher, 58 Or. 557 (114 Pac. 943, 115 Pac. 596); Browning v. Lewis, 39 Or. 11 (64 Pac. 304); Sommer v. Compton, 52 Or. 173 (96 Pac. 124); O. R. & N. Co. v. Hertzberg, 26 Or. 216 (37 Pac. 1019). In arriving at the conclusion that section 325, L. O. L., authorizes a vendee under an executory contract of sale of real property to maintain ejectment when disseized by a trespasser, we are not forgetful of the numerous cases  *   *   *."

This is not an action against the owner of the fee. The circumstances are similar to those in *Kingsley v. United Rys. Co.*, supra. The present plaintiff, as the one in that action, claims that she was wrongfully ousted from possession of the land by one who had no title. The right to the possession of the land in the present instance, as in that one, is the material issue. Our code (§ 1-301) provides that every action "shall be prosecuted in the name of the real party in interest", and if this means that "he who has the right is the person to pursue the remedy" (34 Yale Law Journal 259), then it is clear that this plaintiff is the proper person to maintain this action.

With the reasoning employed in *Kingsley v. United Rys. Co.*, supra, and in *Weatherford v. McKay*, supra, we remain in full accord. Based upon those precedents, especially *Kingsley v. United Rys. Co.*, we believe that the present action may be maintained.

The petition for a rehearing is denied.

BEAN, C. J., and KELLY and BELT, JJ., concur.