HALL, Appellant, vs. BAKER, Respondent.

*March 13 — April 25, 1889.*

*Division of counties: Apportionment of property and debts by law: Alteration by agreement: Powers of county board: Tax certificates: Subscription to stock of railroad: Definiteness of proposition: Curing irregularities: Record of tax deed: General index.*

1. Ch. 114, Laws of 1879, organized the county of Marinette out of territory theretofore embraced in the county of Oconto, and enacted (sec. 8) that each county should be the exclusive owner of all real property situated within its boundaries, and that the treasurer of Oconto county should, "upon demand by the treasurer of the county of Marinette, assign to said county of Marinette all tax certificates in his office upon land situated in said county of Marinette." *Held:*

   (1) The legal title to such tax certificates did not pass to Marinette county by virtue of the act itself, but a formal assignment was essential.

   (2) The act did not make such specific disposition of the tax certificates as would prevent the county boards of the two counties from agreeing that they should remain the property of Oconto county.

2. Under sec. 669, R. S., the county boards of the two counties had power to agree, by way of compromise, that the tax certificates

should remain the property of Oconto county, in consideration of a release by that county of claims against the county of Marinette.

3. Such compromise having been agreed upon by the county boards, and resolutions to that effect having been adopted and duly entered upon their respective records, and the treasurer of Marinette county having never demanded the certificates but having left them with Oconto county as its property, such certificates stood upon the same footing as though the act of 1879 had never transferred the equitable title to Marinette county; and the tax deeds issued thereon properly refer to Oconto county as the original holder, not the assignee, of the certificates.

4. Tax certificates are "other property" within the meaning of sec. 949, R. S., providing that a county may make a subscription to the capital stock of a railroad company, "to be paid in money, lands, or other property."

5. A proposition by a railroad company that a county make a subscription to its capital stock, to be paid by conveying to the company all the lands which the county owned and which were not occupied for public purposes when the proposition should be accepted, and by transferring all the tax certificates which the county then owned and which should come to its possession before the completion of the road, was sufficiently definite as to the property and its value, though no lands or tax certificates were specifically described.

6. If there were any defects or irregularities in the proceedings by Oconto county in subscribing and paying for stock of the St. P. E. G. T. R. Co., they were cured by ch. 151, Laws of 1887, and such proceedings were thereby rendered valid, even when called in question in a suit commenced before the passage of that act.

7. Under sec. 759, R. S., providing that the register of deeds shall keep a general index in which he shall enter the names of grantors in alphabetical order, the name of the county only, and not the state, need be entered as the grantor in a tax deed.

8. For the description of the land such general index may say merely "See deed," where the deed containing the description is transcribed at length in the proper record.

APPEAL from the Circuit Court for *Marinette* County.

Ejectment. The facts will sufficiently appear from the opinion. The plaintiff appeals from a judgment in favor of the defendant.

For the appellant there was a brief by *Webster & Wheeler*, and oral argument by *W. H. Webster.*

For the respondent there was a brief by *Fairchild & Fairchild*, and oral argument by *H. O. Fairchild.* They contended, *inter alia*, that the act of 1879 passed to Marinette county the legal title to the tax certificates. A tax certificate evidences an interest in land and is therefore *real property.* R. S. sec. 4971, subd. 9; *Van Camp v. Peerenboom*, 14 Wis. 70; *Eaton v. Manitowoc Co.* 44 id. 489; *Horn v. Garry*, 49 id. 464. The formal assignment was intended to be the *documentary* evidence of the transfer, but not the transfer itself. *Wright v. Roseberry*, 121 U. S. 488; *Southern P. R. Co. v. Orton*, 32 Fed. Rep. 457; *Jackson L. & S. R. Co. v. Davison*, 32 N. W. Rep. (Mich.), 726; *Langdeau v. Hanes*, 21 Wall. 521; *People. ex rel. McKenzie v. Ulster Co.* 94 N. Y. 263; *Supervisors v. Ellis*, 59 id. 620; *People v. Fields*, 58 id. 491. If the act passed only the equitable title, still it effectually deprived Oconto county and its officers of all authority over the certificates, except mere obedience to the directions of the act, and any other disposition was unlawful. It made a specific disposition of these certificates, which could not be abrogated or departed from except by the authority of the legislature itself. The county board could not release the treasurer of Marinette county from the performance of the duty, imposed by the act, to demand the certificates. *Beal v. St. Croix Co.* 13 Wis. 500; *Douglas Co. v. Walbridge*, 38 id. 179. Oconto county had no authority or capacity under the law to purchase or receive the surrender of the tax certificates. *Knox v. Peterson*, 21 Wis. 247; *Sprague v. Coenen*, 30 id. 209; *Eaton v. Manitowoc Co.* 44 id. 489; *Dreutzer v. Smith*, 56 id. 292; *Wright v. Zettel*, 60 id. 168.

Cole, C. J. This is an action of ejectment, and the foundations of the plaintiff's title are tax deeds issued to

Oconto county. A number of objections is taken to the validity of these deeds. It is insisted that the deeds are void upon their face, and vested no title to any of the lands therein described in Oconto county for various reasons. Some of these reasons will be first considered.

In order to fully understand the objections to the tax deeds, it is necessary to premise that by ch. 114, Laws of 1879, the legislature created and organized the county of Marinette out of territory theretofore embraced in the county of Oconto. By the eighth section of the act it was provided that the counties of Oconto and Marinette should each be the exclusive owner of all the real property situated, respectively, within the boundaries of each county. It was further provided that the treasurer of the county of Oconto "shall, upon demand by the treasurer of the county of Marinette, assign to the county of Marinette all tax certificates in his office upon lands situated in the county of Marinette. The county of Marinette shall be liable to the county of Oconto for its just share of the liabilities and indebtedness now existing against said county of Oconto, when discharged by said county of Oconto;" such share to be ascertained upon the basis specified in the law. A part of the property owned at the time by Oconto county was a large number of tax certificates on lands in Marinette county, and the plaintiff derives title through tax deeds issued upon some of these tax certificates. In view of the other facts in the case, the inquiry becomes material whether the provision above referred to vested in Marinette county a perfect legal title to these tax certificates, or whether only an equitable title, which became a perfect legal title upon their being assigned to Marinette county as provided in the law. We are very clear in the opinion that the legal title did not pass to Marinette county by virtue of the act itself, but that an assignment of the tax certificates was contemplated and was essential to pass such title. This

conclusion seems plain from the language of the act itself, for it does not profess to vest the legal title to such certificates in Marinette county, but makes it the duty of the treasurer of Oconto county, upon the demand of the treasurer of Marinette county, to assign them. Such assignment would be wholly idle and useless if the title without it was perfect and complete in Marinette county. Therefore, until such assignment was made, the legal title must be deemed to remain in Oconto county. It is claimed when the legislature used the words "real property" in the act it had in view the decisions of this court which held a tax certificate as an instrument which was evidence of an equitable title in land, and that the intention was to pass whatever interest in real estate was represented by the certificate to Marinette county, the same as though it had been a certificate of the entry of government land situated in that county. We do not think this is a proper construction of the act, for the reason that it makes a formal assignment of the tax certificate by the treasurer of Oconto county essential. As we have said, it is not to be presumed the legislature would require such an assignment to be made unless some effect was to be given to it. And we can conceive of no other effect than to pass the legal title to the certificate, as in the case of the assignment of other tax certificates sold by the county.

Now, while these tax certificates were still held by Oconto county, the board of supervisors of that county at a legal meeting in September, 1879, adopted a resolution reciting, in substance, that matters of difference had arisen between that county and the county of Marinette concerning the transfer of such tax certificates to the latter county, and Oconto county proposed, as a basis for a full and final settlement with Marinette county, and offered to release that county from all indebtedness to it, upon Marinette county agreeing to surrender all right and title to the tax

certificates awarded to that county by the law creating it. At a meeting of the board of supervisors of Marinette county in November, 1879, that board adopted on its part a resolution which recited the resolution of the Oconto board, and in effect resolved to accept the offer of that county for a full and final settlement of all claims it had or could have against the county of Oconto for tax certificates or otherwise. In other words, the proposition for compromise was accepted by the board of supervisors of Marinette county, substantially as proposed by the board of Oconto county, and the tax certificates remained in the possession of the latter county according to the terms of the settlement. Objections are taken to this compromise or adjustment of the matters in dispute between the two counties. It is said the counties had no power to make it; consequently Oconto county acquired no right or title to the tax certificates attempted to be surrendered by Marinette county. It is proper to remark that the counties themselves do not repudiate the settlement, but abide by it, so far as appears, as being a just and fair compromise of the controversies between them. But it is said, if the counties had no authority in law to make it, the tax deeds issued to Oconto county on tax certificates on lands in Marinette county were void and vested no title in the former county. The important question, therefore, is as to the power of the two county boards to make the compromise which they did make. Had they that power? It seems to us they had. County boards, among other things, have express authority conferred upon them " to make such orders concerning the corporate property of the county as they may deem expedient;" they " can settle and allow all accounts, demands, or causes of action against the county;" they represent the county, and " have the care of the county property, and the management of the business and concerns of the county, in all cases." Sec. 669, R. S. It seems

to us that these provisions confer full power upon the county boards to settle and adjust any controversy which existed between the two counties. This court has held that a municipal corporation, unless restricted by its charter, may submit a disputed claim against it to arbitration *(Kane v. Fond du Lac,* 40 Wis. 495); and we can see no valid reason for holding that a county board may not settle and compromise a cause of action against the county. That power is given in express words, and fully includes the authority to make the compromise in question, where the two boards act in good faith to adjust a *bona fide* claim. It is suggested that to sustain such a compromise would open the door to the county board speculating in tax certificates or buying them from other counties, or enable the board to give away and surrender the property of the county. We do not think any such serious consequences would follow from sustaining the power to compromise a claim. Nor do we understand that the two boards gave away anything belonging to their respective counties in any other sense than that every party to a controversy relinquishes a portion of a claim he makes against his adversary to effect a settlement and avoid litigation and expense. Presumably the two boards deemed it expedient to make a settlement of their differences; Oconto county agreeing to pay all indebtedness against it in consideration that Marinette county surrendered to it its right to the tax certificates awarded to it by the act of division. In making this settlement or compromise the two boards acted strictly within their jurisdiction and the power conferred upon them by the statute, and the settlement must be held valid and binding. If authorities are needed to so obvious a proposition, the following cases will be found in point: *Supervisors of Chenango v. Birdsall,* 4 Wend. 453; *Supervisors of Orleans Co. v. Bowen,* 4 Lans. 24; *Collins v. Welch,* 58 Iowa, 72.

It is further insisted that the two boards could not make

any disposition of these tax certificates, because the legislature itself had made a specific disposition of them.   By the compromise we hold the certificates became the property of Oconto county as they were before the division, and that county had the same authority over them it had as to other tax certificates belonging to it.  There is nothing in the law creating Marinette county and providing for a transfer of the certificates to that county, which prohibits the counties from treating them as other tax certificates.   In effecting the compromise, the two boards could divide, apportion, or release them as they might see fit; for there is no restriction whatever in the act of 1879 which prevents the two boards from exercising full control over them, or from. disposing of them in the way they did.   It seems hardly necessary to remark that the question here presented was not involved in the case of *Smith v. Barron Co.* 44 Wis. 686, and of course was not considered.  That was an executory contract for the sale of tax certificates, and it was held that the county treasurer was not authorized to sell them on credit.   Here it is a question whether, by the compromise made, Oconto county can retain the certificates originally issued to it in consideration of assuming the outstanding liabilities against it which by the division Marinette county became bound to pay.   It comes back to the simple question of power to make the compromise which was made.   Upon that point we have indicated our view that the power was ample and clear; for, as the plaintiff's counsel says, had the legislature made no division of property or no apportionment of the indebtedness between the two counties in the act, upon general principles of law Oconto county would have retained all of its property, rights, and privileges, and been subject to all existing obligations and duties.

The position of defendant's counsel that it does not appear that the proposed settlement was ever consummated

is too clearly untenable to require discussion. The two boards acted favorably upon substantially the same proposition, and adopted it by a resolution entered upon their records. It is fair to assume that these boards considered the terms of the compromise, approved of them, and ratified them. Nothing further was left to be done to carry out the compromise, except to perform the agreement which had been adopted. It does not appear that the treasurer of Marinette county has made any demand for the tax certificates since the compromise, but has left them with Oconto county as its property. The effect of the compromise, in our judgment, was to restore to Oconto county all right to and authority over the tax certificates as they existed previous to the division, under the general statutes, and they stand upon the same footing as though the equitable title to them had never passed from that county. We can reach no other conclusion upon the facts disclosed in the record.

We now pass to the next step in the proceedings which affects the title of the plaintiff. In December, 1881, the St. Paul Eastern Grand Trunk Railway Company, a Wisconsin corporation, delivered to the county clerk of Oconto county a proposition in writing, signed by its president and secretary, by which it proposed to build and operate a railroad in Oconto county, providing that county would aid in its construction by a subscription to the stock of the company. The subscription to the stock was to be paid for by conveying to the company all the lands owned by the county at the date of the acceptance of the proposition, except what was actually and visibly occupied for public purposes; also by a transfer of all the tax certificates owned by the county subject to a deed but not actually deeded to the county when the proposition should be accepted by a vote of the people; and also convey all lands which might come into the possession of the county by reason of the nonpayment

of taxes, and all subsequent certificates thereon, until the final completion of the road through the county and the delivery of the deeds to the railroad company. The proposition contains other conditions which it is not material now to notice. This proposition was accepted at an election duly held in the several towns and wards in the county in January, 1882. The plaintiff derives title from the railroad company, and it is objected that the proceedings by which the county made its subscription to the stock of the company, and paid for it, were so defective and irregular that the company acquired no title to the lands which were conveyed by the county in payment.

First, it is insisted that the county could not pay its subscription in tax certificates. But the statute authorized the county to pay its subscription "in money, lands, or *other property*, instead of by the issue of bonds." Sec. 949, R. S. An effort was made to show that tax certificates could not be included in the words "other property," but to our minds the argument on this point was not satisfactory or convincing. We deem the position entirely unsound, having no doubt that the county might pay its subscription to the stock in whole or in part in tax certificates which it owned. This special provision on this subject controls the general statute, which requires that such certificates should be sold for cash, as was decided in *Smith v. Barron Co.* 44 Wis. 686. It is suggested that great confusion and inconvenience would result in allowing the county to thus dispose of tax certificates. But the legislature has clearly authorized such a disposition of them, for it says that the county may pay its subscription in lands or other property, and we are utterly unable to adopt the view that tax certificates are not included in the words "other property," within the meaning of the statute. The question seems too plain to admit of argument.

Again, it is said the proposition of the company was not

sufficiently definite to comply with the statute, because it was impossible to tell what was the value of the lands or of the certificates voted to pay the subscription. We have quoted the material part of the proposition bearing on this point. It will be seen that the proposition was that the county should pay its subscription by conveying to the company all the lands which it owned and which were not occupied for public purposes when the proposition was accepted by a vote of the people; and should also transfer all the tax certificates which the county then owned, or which might come to its possession subsequently, until the final completion of the road. True, no particular certificates are described by number or otherwise, but it was not difficult to ascertain either the lands or the certificates which the county owned and undertook to convey or transfer. *Id certum est quod certum reddi potest,*— that is certain which can be made certain; and it surely would not be difficult to determine either the lands or certificates which were included in the engagement of the county. Whether the quantity of land covered by the certificates and deeds was forty acres or forty thousand, it was possible to ascertain what the county owned on the completion of the road, and which by the proposition it was to give in payment of its subscription. The proposition was sufficiently definite and certain to meet the requirements of the statute.

But it is further objected that the road was not completed within the time fixed in the original proposition which was voted upon, nor within the additional period given by the county board. The road was divided into three sections, and it is admitted that the first section was completed within the time named. But the second section should have been completed January 1, 1883, but was not. The county board, however, extended the time for completing it one year, as it was authorized to do under sec. 955, R. S. But, as the road was not completed within the extended

time, the company took steps by a petition addressed to the county board, stating another proposition for the completion of its road, and asking aid. The purpose of the new proposition was declared to be to secure to the railroad company beyond cavil or dispute such lands and tax certificates and the lands therein described as by the original proposition of December 12, 1881, were deliverable to the company January 1, 1884, leaving such original proposition otherwise in full force. The manifest object of this proceeding was doubtless to save a forfeiture of the lands agreed to be conveyed by the original proposition, because the entire road had not been completed at the time therein fixed. The company proceeded by a petition signed by a majority of the resident tax-payers, according to the first mode pointed out in sec. 946, R. S., to have the time for completing its road extended to July 17, 1884, as in case of an original proposition to grant aid. The new proposition was accepted by a majority of the resident tax-payers of the county, and the county board ordered that the proposition be carried into effect. It appears that the road was fully completed and in operation July 16, 1884, and afterwards the county clerk of Oconto county conveyed the lands described in the complaint; with other lands, to the railroad company. Subsequently the company sold and conveyed them to the plaintiff. Now, it is said this second proceeding, taken to extend the time for the completion of the road to July 17, 1884, and preserve to the company the subscription originally voted on the first proposition, was wholly unauthorized and void, and no effect should be given to it. Whether this position is correct we shall not stop to determine, for this reason: The legislature passed ch. 151, Laws of 1887, which provides that "all proceedings on the part of Oconto county, heretofore had, in subscribing and paying for any stock of the St. Paul Eastern Grand Trunk Railway Company, are hereby legalized and declared to be of the same

legal force and effect as though the law governing the mode and procedure by which counties in this state may lawfully subscribe and pay for stock of any railway company, in force at the time, had been in all respects complied with." If there were any defects or irregularities in the proceedings, they were cured and made valid by this act. It is true this law was enacted after the commencement of this suit, but still this effect must be given to it. It certainly legalizes the proceedings for the subscription and payment of the stock of the company, if there was anything illegal or irregular in the course and steps previously taken by the county. That is the effect of this curative statute.

In March and April, 1882, the county clerk of Oconto county, for and on behalf of that county and the state, issued to the county the four tax deeds embracing the lands claimed by the plaintiff. These tax deeds appear to be in due form. True, it is objected that they do not state or show that Oconto county was the assignee of the certificates. But, as we have seen, Oconto county never in fact parted with them. They were not delivered to the treasurer of Marinette county, and therefore were not re-assigned by that officer when the compromise was entered into. The tax certificates had remained in the possession of Oconto county all the time unassigned and undelivered. Under these circumstances it would have been contrary to the fact to state that Oconto county was the assignee of the tax certificates. The tax deeds properly refer to the county as the original holder of them, as it was in fact.

But it is further objected that these tax deeds were never properly recorded. The alleged defect in the record is that the register did not enter, in the general index kept by him, the state of Wisconsin as one of the grantors. It is said that this was essential, and was required by sec. 759, R. S. We are inclined to hold that if the name of the county which gives the deed is entered in the index, this is

all that is required by the provision referred to.  A person searching the record for a tax deed would naturally look for the name of the county which gave it, and would not be likely to look for the name of the state as grantor.  It would be laborious to find the proper deed under the name of the *state*, considering the many counties in the state. For the description of the land the index says, " See deed." This has been held sufficient.  In *St. Croix L. & L. Co. v. Ritchie*, 73 Wis. 409, this court said: " The omission to enter a description of the land under the appropriate head in the general index is cured by the transcribing of the deed at length, containing such description, in the proper record."

This case was tried by the court without a jury.  The findings of the court contain all the evidence given on the trial.  The court held that Oconto county had no title to and was not the owner of any of the tax certificates at the time the tax deeds thereon were issued.  This is contrary to the views which we have expressed.  The court did not consider or pass upon the question whether the railroad company would have acquired title from the county had there been title in the county to transfer; but the court in its thirty-fourth finding states that it was admitted at the trial by the defendant, and is here found as a fact, that, in case the plaintiff's title is sustained, the defendant has no valid title to the lands referred to, as all of the tax deeds on which his title is based were invalid for irregularities still open to inquiry in the tax proceedings in the train of which the tax deeds were issued.  As all the facts of the case are before us we must reverse the judgment of the circuit court, and remand the case with directions to enter judgment for the plaintiff.

*By the Court.*— It is so ordered.