Argued 9 February, decided 10 April, 1905.

## MULTNOMAH COUNTY *v.* TITLE GUARANTEE CO.

80 Pac. 409.

CONSIDERATION FOR COMPROMISE AGREEMENT—COUNTIES.

1. Where a genuine dispute exists between parties claiming conflicting rights, as, for instance, between a county and a property owner as to the validity of certain tax claims and tax sale certificates, a compromise and settlement of their respective claims is upon a sufficient consideration.

RESCISSION OF EXECUTED CONTRACT—RETURNING CONSIDERATION.

2. An executed or partly executed contract cannot be rescinded by one of the parties, in the absence of fraud, without returning the consideration, or restoring the other party to his former position. This case illustrates: A property owner having compromised sundry tax disputes with a county by paying a sum of money and dismissing certain suits and appeals, the county cannot rescind the settlement while retaining the money and the advantage of the dismissals.

COUNTIES—VALIDITY OF TAX SETTLEMENTS NOT FRAUDULENT.

3. Where a compromise settlement with a board of county commissioners of sundry taxes and tax certificates in litigation was not fraudulent, the board, if it had the power to make the settlement, cannot rescind it and retain the proceeds after the decree adjudging the certificates valid has become final, though the agreement of compromise included taxes not referred to in the offer to compromise, and the statement as to the amount of the taxes was incorrect. The commissioners act in such cases as fiscal agents of the county, and they and the county are subject to the rules ordinarily applicable between principal and agent.

POWER OF COUNTY COMMISSIONERS TO SETTLE LITIGATION.

4. Under B. & C. Comp. §§ 912, 913, 2518, authorizing suits against a county, conferring power on the county commissioners in relation thereto, and permitting them to release any debt or damages arising out of contracts due the county, on such terms as may be just, the county commissioners can settle pending controversies as to the validity of tax certificates held by the county, and the rights of the respective parties thereunder.

SETTLEMENTS BY COUNTY COMMISSIONERS—STATUTORY CONSTRUCTION.

5. Section 912 of B. & C. Comp., subd. 10, authorizing the county court to release any debt or damages arising out of a contract due the county, does not preclude the county court from the settlement of controversies arising in other ways, under the rule that expression of one power excludes all others, since other sections of the statutes make it evident that no such intention existed.

POWER OF COUNTY OVER LAND BOUGHT FOR DELINQUENT TAXES.

6. Under Laws 1893, p. 28, authorizing the county judge to purchase property at delinquent tax sales, and declaring that it shall become the property of the county, subject to redemption, such property, after purchase, is entirely under the control of the county commissioners, and the interests of other municipalities therein are subject to its disposal.

IDEM.

7. The clause in Laws 1893, p. 28, providing that land purchased by a county for unpaid taxes shall become the property of such county,

subject to redemption, is intended to preserve to the owner the right to redeem, and not to prevent the county from otherwise disposing of it. The county may dispose of it as may be deemed advisable, as, by compromising its title and giving up its claim entirely.

From Multnomah : John B. Cleland, Judge.

Statement by Mr. Justice Bean.

This is a suit by Multnomah County against the Title Guarantee & Trust Co. and others to set aside and cancel a compromise agreement or settlement of a controversy between the plaintiff and the defendants concerning the validity of certain tax certificates held by the plaintiff against block 178 in the City of Portland, and 80 acres of land in the Quinn donation land claim, in or near that city. The property was assessed to P. A. Marquam for the year 1894, and to his successor in interest, the defendant trust company, for the years 1895 to 1897, inclusive. The taxes for these years—amounting in all, including penalties and costs, to about $25,000—were not paid, and the land was sold to the plaintiff in 1899, under a warrant for the collection thereof. The defendant trust company thereafter commenced suit to quiet its title to the premises. The county answered, setting up the tax proceedings and the purchase of the land by it, and obtained a decree in its favor. From this decree the trust company appealed. Pending the appeal, and on December 12, 1900, the defendant Ross, trustee, who had in the mean time succeeded to the title to the property, made to the board of county commissioners of the plaintiff a written proposition to compromise the pending litigation concerning the plaintiff's title and rights under the tax certificates, and also a dispute or controversy between him and the plaintiff as to the validity of the taxes levied against the property for the years 1898 and 1899, which in the mean time had become delinquent, and the land had been sold and purchased by the county. The board of county commissioners, after consideration of the matter, deeming the proposition of Ross to be for the best interests of the county, accepted it, and caused to be entered in their journal an order that, upon the payment by Ross of $15,774.53 and the costs of the pending litigation, "all the taxes, tax sales or tax liens, due or held by the county for each and every year prior to 1900 be, and the same are hereby, satisfied and canceled, and that each

and every one of the tax certificates held by the county against
said property for each and every year prior to 1900 be canceled
and surrendered up; it being understood that this compromise
and settlement includes, satisfies and discharges all claims of
the county for taxes of whatsoever nature prior to the year
1900." Relying upon this settlement or compromise, and assum-
ing that it was valid, Ross paid to the county the amount of
money agreed upon, and caused the appeal in the suit brought
by the trust company against the county to quiet its title to be
dismissed, and the several tax certificates or liens were by the
county canceled of record.

Two and one-half years or more thereafter the board of county
commissioners of the plaintiff made an order attempting to
rescind the compromise and settlement on the ground that it
was made "without jurisdiction and was illegal and void." This
suit was afterwards brought to cancel and annul such settlement,
without returning or offering to return to the defendants the
amount of money paid by them in reliance thereon, and without
restoring or attempting to restore them to the position they occu-
pied prior to such settlement. The complaint sets out in detail
the proceedings before referred to, and avers that many of the
statements contained in the proposition of Ross, upon which the
settlement was based, were and are untrue, and that the order
of the board of county commissioners includes and attempts to
cancel a large amount of taxes and tax certificates not mentioned
in the proposition of Ross, nor involved in the pending litigation
between the county and the defendants, and were neither irreg-
ular nor invalid. The prayer is for a decree against defendants
for taxes, costs, and penalties against the property, less the
amount paid on the compromise agreement, canceling all the
entries in the records of the county showing satisfaction of such
taxes and tax certificates, and enjoining and restraining the
defendants from claiming or asserting the illegality or invalidity
of the right or title of the county in the land acquired under the
tax proceedings. A demurrer to the complaint was overruled,
and, the defendants declining further to plead, a decree was en-
tered in favor of plaintiff as prayed for, except that the court

declined to require the defendants to pay and satisfy the taxes against the property. From this decree the defendants appeal.

REVERSED.

For appellants there was an oral argument by *Mr. William Ambrose Munly,* with a brief over the name of *J. Thorburn Ross, W. A. Munly* and *John K. Kollock,* to this effect.

I. The board of county commissioners in transacting the business of the county in the care and management of county property, funds and business, under B. & C. Comp. § 912, and subd. 9, acts as the fiscal agent of the county and precisely as would the agent of a private corporation in the management of its affairs: *Crossen* v. *Wasco County,* 10 Or. 111; *Frankl* v. *Bailey,* 31 Or. 285, 288 (50 Pac. 186); *Stout* v. *Yamhill County,* 31 Or. 314, 319 (51 Pac. 442).

Acting as such fiscal agent it has the power to settle and compromise claims for or against the corporation: *Frankl* v. *Bailey,* 31 Or. 285, 288 (50 Pac. 186); Clark & M. Corp., p. 2101.

The board of county commissioners, acting as the fiscal agent of the county, is empowered to make contracts and compromises of claims for or against the county, and to settle suits or actions for or against the county, by B. & C. Comp. §§ 912, subd. 9, 913 and 2518.

II. See constructions of statutes similar to ours in various states holding that boards of county commissioners have full authority to compromise disputed claims, and to surrender county property in such compromises: *Allen* v. *Cerro Gordo County,* 34 Iowa, 52; *Grimes* v. *Hamilton County,* 37 Iowa, 379; *Mills County* v. *Burlington & M. Ry. Co.* 47 Iowa, 66; affirmed on appeal, 106 U. S. 557; *Collins* v. *Welch,* 58 Iowa, 72 (43 Am. Rep. 111, 12 N. W. 121); *Board of Supervisors* v. *Van Stralen,* 45 Wis. 676; *Hall* v. *Baker,* 74 Wis. 124 (42 N. W. 104); *Washburn County* v. *Thompson* 99 Wis. 585 (75 N. W. 309); *Board* v. *Birdsall,* 4 Wend. 453; *Buffalo* v. *Bettinger,* 76 N. Y. 393; *Woods* v. *Supervisors,* 136 N. Y. 403 (32 N. E. 1011); *State* v. *Davis,* 11 S. D. 111 (74

Am. St. Rep. 780, 75 N. W. 897) ; *Brown County* v. *Jenkins,* 11 S. D. 330 (77 N. W. 579) ; *Petersburg* v. *Mappin,* 14 Ill. 193 (56 Am. Dec. 501) ; *Shawneetown* v. *Baker,* 85 Ill. 563 ; *Fitzgerald* v. *Harms,* 92 Ill. 372 ; *Agnew* v. *Brall,* 124 Ill. 312 (16 N. E. 230) ; *St. Louis, I. M. & S. Ry. Co.* v. *Anthony,* 73 Mo. 431. *State ex rel.* v. *Martin,* 27 Neb. 441 (43 N. W. 244) ; *Prout* v. *Pittsfield Fire Dist.* 154 Mass. 450 (28 N. E. 679) ; *Board* v. *Saunders,* 17 Ind. 437 ; *Logansport* v. *Dykeman,* 116 Ind. 15 (17 N. E. 587) ; *San Antonio* v. *Street Ry Co.* 22 Tex. Civ. App. 148 (54 S. W. 281) ; *Smith* v. *Wilkinsburg Borough,* 172 Pa. 121 (33 Atl. 371).

III. If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to a former statute, such meaning will amount to a legislative declaration of the meaning of the prior statute, and will govern its construction: Endlich, Interpret. Stat. §§ 43, 44, 47, 366 ; 26 Am. & Eng. Enc. Law (2 ed.), 624 ; *Alexander* v. *Mayor,* 9 U. S. (5 Cranch) 7 ; *United States* v. *Freeman,* 44 U. S. (3 How.) 564 ; *United States* v. *Alexander,* 79 U. S. (12 Wall.) 180 ; *Cope* v. *Cope,* 137 U. S. 688 (11 Sup. Ct. 222) ; *Superior* v. *Norton,* 63 Fed. 357 ; *United States* v. *Morton,* 65 Fed. 209 ; *Hunt* v. *Hunt,* 37 Me. 348 ; *Cannon's Admr.* v. *Vaughn,* 12 Tex. 399 ; *Lawrence* v. *People ex rel.* 188 Ill. 413 (58 N. E. 991) ; *Georgia Penitentiary* v. *Nelms,* 65 Ga. 67 ; *Northern Pac. R. Co.* v. *Barnes,* 2 N. D. 260 (51 N. W. 401) ; *Philadelphia R. Co.* v. *Catawissa R. Co.* 53 Pa. 61 ; *Cochen* v. *Methodist Church,* 32 N. Y. App. Div. 239 ; *Smith* v. *People,* 47 N. Y. 330 ; *In re Livingston,* 121 N. Y. 104 (24 N. E. 290) ; *Hart* v. *Reynolds,* 48 Tenn. (1 Heisk.) 217 ; *Commonwealth* v. *Sylverster* (13 Allen), 95 Mass. 247 ; *State* v. *Ohio S. & S. Orphans' Home,* 37 Ohio St. 275 ; *Supervisors* v. *Ehlers,* 45 Wis. 295.

IV. A compromise made by a trustee, if for good cause and in good faith, will be sustained : *Blue* v. *Marshall,* 3 P. Wms. 381 ; *Forshaw* v. *Higginson,* 3 De. G. M. & G. 827 ; *Ratcliffe* v. *Winch,* 17 Beav. 217 ; *Mayer* v. *Foulkrod,* 4 Wash. C. C. 349 (Fed. Cas. 9342) ; *Jeffries* v. *Mutual Life Ins. Co.* 110 U. S. 305 (4 Sup. Ct. 8) ; *Moulton* v. *Holmes,* 57 Cal. 337 ; *Mulville* v. *Pacific Mut. Life Ins. Co.* 19 Mont. 101 (47 Pac. 650) ; *Brun-*

*er's Appeal,* 57 Pa. 52; *Wyman's Appeal,* 13 N. H. 18; *Broxton*
v. *Harrison,* 11 Gratt. 54; *Boyd* v. *Oglesby,* 23 Gratt. 684; *Dav-
enport* v. *First Cong. Soc.* 33 Wis. 390; *Wamsley* v. *Wamsley,*
26 W. Va. 47; *Gomez* v. *Gomez,* 54 N. Y. Sup. 237; *Choteau* v.
*Suydam,* 21 N. Y. 179; *Chase* v. *Bradly,* 26 Me. 531; *Pool* v.
*Dial,* 10 S. C. 440; *Clarke* v. *Cordis,* 86 Mass. (4 Allen), 466;
Perry, Trusts, § 482; Ames, Trusts, § 494, note.

V. A contract must be rescinded, if at all, as a whole; it cannot
be regarded as valid in part and bad in some particulars: *Crossen*
v. *Murphy,* 31 Or. 114, 118 (49 Pac. 858); *Bohall* v. *Diller,* 41
Cal. 532; *Kelley* v. *Owens,* 120 Cal. 502 (47 Pac. 369, 52 Pac.
143); *Neal* v. *Reynolds,* 38 Kan. 432 (10 Pac. 785); *Perley* v.
*Balch,* 40 Mass. (23 Pick.) 283 (34 Am. Dec. 56); *Hyslip* v.
*French,* 52 Wis. 513 (9 N. W. 605); *Hoffman* v. *King,* 70 Wis.
372 (36 N. W. 25).

VI. It is necessary for the county, before it can obtain the re-
lief of the rescission of this contract or compromise, to make a
tender of the consideration paid by the defendants, to restore
them all their rights and property and place them in statu quo:
*Knott* v. *Stephens,* 5 Or. 235; *Frink* v. *Thomas,* 20 Or. 265
(25 Pac. 717, 12 L. R. A. 239); *Clarno* v. *Grayson,* 30 Or. 111
(46 Pac. 426); *Grossen* v. *Murphy,* 31 Or. 114, 118 (49 Pac.
858); *Scott* v. *Walton,* 32 Or. 460 (52 Pac. 180); *Vaughn* v.
*Smith,* 34 Or. 54, 55 (55 Pac. 99).

· For respondent there was an oral argument by *Mr. Charles
Henry Carey,* with a brief over the names of *John Manning,*
District Attorney, and *Carey & Mays,* to this effect.

1. It being claimed by the respondent that the county court
had power to make the order in question, because it had power
to compromise claims against the county, and especially pend-
ing litigation against the county, and that the order of the
county court was therefore valid, we affirm that this point does
not arise in the case, for the reason that if the court has such
power the allegations of the complaint nevertheless show that
the order is void because it not only settles the taxes and can-
cels the tax titles involved in the pending suit, but attempts to
cancel a large amount of taxes that were neither irregular nor

invalid, nor in controversy in the suit, nor included in the petition upon which the order is based.

In any event the power of the county court to compromise a pending suit such as is mentioned in the complaint is doubtful: B. & C. Comp. §§ 912, 913, 2518.

2. The county became a trustee for the City of Portland, the Port of Portland, and the school district in which the real property was situated, when it purchased the property at tax sale, to the extent of the amount of the taxes due to these public corporations, and had no power to compromise the taxes due these corporations without express statutory authority.

As to the Port of Portland, see Laws 1891, p. 793, §§ 5, 8; Laws 1899, p. 149, § 5; Laws 1901, pp. 426, 428, §§ 16, 17; B. & C. Comp. §§ 4650, 4651.

As to the school district, see Laws 1892, p. 118, §§ 3, 4, 6, 7, 11; B. & C. Comp. §§ 3097, 3098, 3100, 3101, 3104, 3374.

3. The order surrendering these properties is absolutely void. An order made by the county commissioners in excess of their powers has no binding force. Thus, it has been held that where the county court has allowed a claim against the county which is not legally allowable, the county may, notwithstanding the order, sue and recover the money: *Grant County v. Sells,* 5 Or. 243; *Union County v. Hyde,* 26 Or. 24 (37 Pac. 76) ; *Board of Comrs. v. Heaston,* 144 Ind. 583 (55 Am. St. Rep. 192, 41 N. E. 457, 43 N. E. 651) ; *Board of Comrs. v. Patrick,* 12 Kan. 605; *State v. Washoe County,* 14 Nev. 66; *Board of Comrs. v. Van Clief,* 1 Hun, 454; *Board of Supervisors v. Ellis,* 59 N. Y. 620.

4. When county officers undertake to exercise powers, the mode or manner of their procedure must be as prescribed by law. If they attempt to exercise any power otherwise than as prescribed by law, their action is absolutely void: *Lyon County v. Ross,* 24 Nev. 102 (50 Pac. 1) ; *Douglass v. Lowell,* 60 Kan. 239; *People ex rel. v. Roberts,* 8 App. Div. 219 (151 N. Y. 540, 45 N. E. 941).

5. A sale of lands for taxes, whether the purchaser be the State or county, after the period of redemption expires, gives the purchaser an absolute title in fee simple: *Lyon County v. Ross,* 24 Nev. 102 (50 Pac. 1) ; *Connecticut Mut. L. Ins. Co. v.*

[34—46 Or.]

*Wood,* 115 Mich. 444 (74 N. W. 656); *Muskegon Lum. Co.* v. *Brown,* 66 Ark. 539 (51 S. W. 1056).

6. It is not only competent but the duty of county commissioners to rescind an order improvidently granted to release one from the assessment of a legal tax upon property: *Lemly v. Forsyth County Comrs.* 85 N. C. 379.

MR. JUSTICE BEAN delivered the opinion of the court. .

The ground upon which the plaintiff bases its right to repudiate and rescind the compromise or settlement between its board of county commissioners and the defendants are mainly as follows: First, the board had no authority to make the agreement or settlement, because (a) no such power is conferred upon it by law; (b) other public corporations besides the county, such as the Port of Portland, the City of Portland, and the school district, had interests in the tax certificates, which the county could not surrender or dispose of; and (c) the act authorizing the county to purchase property at a delinquent sale provides that it shall hold the title subject to redemption, thus impliedly prohibiting the taxpayer from relieving himself from the effect of the sale in any other manner; second, the compromise included taxes and tax certificates not involved in the suit then pending between the plaintiff and the defendants, and which were not mentioned or referred to in the proposition of Ross for settlement; and, third, the offer or proposition of Ross contained statements and representations which were not accurate.

1. It cannot be doubted, we think, that the agreement between the board of commissioners and the defendants to compromise or settle the controversy or dispute concerning the tax certificates held by the plaintiff, and the litigation then pending in reference thereto, is a valid and binding compromise and settlement, in view of what has been done under it, and the impossibility of restoring the parties to their former positions and rights, if the county commissioners had power to make it. There was at the time a bona fide dispute as to the validity of the taxes and tax certificates, and as to the rights of the county thereunder. A large part of these certificates were actually in litigation, and the

validity of the others was denied. There was therefore sufficient consideration to support the compromise agreement: *Smith* v. *Farra,* 21 Or. 395 (28 Pac. 241, 20 L. R. A. 115).

2. There is no charge that it was fraudulently made, but it was made in good faith, and has been executed. The money which the board of commissioners agreed to accept in full satisfaction of the rights of the plaintiff has been paid and retained. The appeal of the defendants then pending has been dismissed, and the decree of the circuit court become final. It is therefore too late for the county alone to repudiate the contract. The rights of the parties have become fixed, and they cannot be unsettled by one alone. If the plaintiff could rescind at all, it could not be done without restoring to the defendants what it had received under the agreement, and putting them in the position they were before the agreement was made—a manifest impossibility, as their rights under the then pending appeal cannot be restored. It would be unconscionable, therefore, for the plaintiff, if the board of commissions had power to make the agreement, to retain the fruits thereof, and, after the appeal of the defendants had been dismissed, and the decree of the circuit court adjudging the certificates to be valid had become final, to absolve itself from the burdens and obligations of the contract.

3. Nor does the fact that the compromise settlement or agreement included taxes and tax certificates not referred to in the proposition of Ross, nor involved in the pending litigation, alter the question. In making the settlement the county commissioners were not acting as a court, but as a mere financial or business agent of the county; and the contract actually made by them with the defendants, if they had power to make it, is binding, in the absence of fraud, although it may include matters outside the proposition of Ross and the pending litigation. Ross' petition was a mere proposition for a settlement of the controversy between him and the county, stating the terms upon which he was willing to make it. It was nothing more than merely opening negotiations on the subject, and the result of such negotiations is to be ascertained from the contract as actually made, and not from the initiatory proposition therefor. The question is not to be determined as if we were considering a

judgment or decree of a court outside the issues, or an award of arbitrators outside the contract of submission, but rather as an ordinary contract or agreement between parties. County commissioners, in transacting the business of the county, and in the care and management of its property and funds, do not act as a court, but as a financial or managing agent of the county, precisely as an agent of a private corporation in the management of its financial concerns, and all contracts made by them within the power conferred are subject to the same rules: *Stout* v. *Yamhill County*, 31 Or. 314 (51 Pac. 442) ; *Frankl* v. *Bailey*, 31 Or. 285 (50 Pac. 186). Nor is it of any consequence that the statements in the written proposition of Ross for the settlement as to the amount of taxes, tax certificates, etc., were not correct. There is no charge that they were made knowingly or for a fraudulent purpose, or with intent to deceive, or that the board of commissioners was in any way misled thereby. Indeed, it is difficult to understand how the commissioners could have been deceived, as all the matters referred to, and concerning which the parties were negotiating, were a part of the county records, and the commissioners knew or were charged with knowledge of the amount of the taxes and tax certificates held by the county, without relying on the statements of Ross or any one else.

4. We pass then to the question as to whether the board of county commissioners had power to make the compromise agreement and settlement with the defendants. This question does not, as seems to have been assumed, necessarily involve the power or authority to compromise or agree with the owner of property to accept in satisfaction of taxes an amount less than that levied or attempted to be levied against the property. In this case all the taxes had become delinquent, and the property had been sold and purchased by the county under the provisions of the act of 1893 (Laws 1893, p. 28), and had therefore "become the property of the county, * * subject to redemption as provided by law." By such a purchase a county acquires an interest in or a specific lien upon the property (*Berger* v. *Multnomah County*, 45 Or. 402 (78 Pac. 224), which is, of course, a valuable property right. The title and right of the plaintiff,

however, under the purchase made by it, were in dispute.   A large part of the tax certificates were in actual litigation, and the validity of the remainder was denied.   In making the contract of settlement, therefore, the board of commissioners were dealing with property rights belonging to the county, and which were in dispute and litigation.   It is difficult to discover any legal principle which will deny to them the power to compromise and settle such a controversy, when, in their judgment, the best interests of the county require it.   It would be unreasonable to hold that because a county, by direct legislative requirement, involuntarily becomes possessed of tax certificates which are of doubtful validity, and which involve and threaten to involve it in extensive and protracted litigation, it must go through such litigation, without the power of extricating itself therefrom by an honest and bona fide agreement with its adversary.   Each county of the State is a body corporate, having certain prescribed powers.   Among these is the power "to sue and be sued; * * to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county": B. & C. Comp. § 2518.   All actions, suits or proceedings by or against a county are in the name of the county, but it is represented by the county court, which has authority and power to conduct and direct the proceedings therein as if it were plaintiff or defendant: B. & C. Comp. § 913.   The powers of a county as a body politic can only be exercised by the county judge and the commissioners sitting for the transaction of county business, or by a board of county commissioners, who are, so to speak, a board of directors or managing agents of the corporation, which is the county, and, as such, "have the general care and management of the county property, funds, and business, where the law does not otherwise expressly provide" (B. & C. Comp. § 912, subd. 9), and the "power to compound for and release in whole or in part any debt or damages arising out of contract due the county, and for the sole use thereof, upon such terms as may be just and equitable": B. & C. Comp. § 912, subd. 10.   It seems to us these provisions of the statute plainly conferred full power and authority upon the board of county commissioners to settle and adjust the pending controversy between it and the defendants

as to the validity of the tax certificates held by the county, and the rights of the respective parties thereunder.

Such seems to be the power of the county boards in other states under similar statutory provisions. Thus in Wisconsin the statute provides that the county board shall have authority "to make such orders concerning the corporate property of the county as they may deem expedient"; to "settle and allow all accounts, or demands, or causes of action against the county"; and to "have the care of the county property and the management of the business and concerns of the county in all cases." It was held there that under these provisions the county board had authority to settle and compromise a dispute or controversy between its county and an adjoining county as to the ownership of certain tax certificates, somewhat similar to the ones in question here (*Hall* v. *Baker,* 74 Wis. 118, 42 N. W. 104), and to compromise and settle a judgment against the county treasurer and his bondsmen for public moneys lost through depositing the same in an insolvent bank: *Washburn County* v. *Thompson,* 99 Wis. 585 (75 N. W. 309). In the case just referred to it is said that the power of the managing officers of a county to compromise and settle disputed or doubtful claims against the county is a necessary incident to the right to sue and be sued, and that such power exists and may be exercised at any time before the validity of the claim is fixed by final judgment, and thereafter in case of the insolvency of the debtor, citing 1 Beach, Pub. Corp. §§ 638, 639, and 1 Dillon, Mun. Corp. § 477. Missouri has a similar statutory provision as to the power of the county courts, and in *St. Louis, I. M. & S. Ry. Co.* v. *Anthony,* 73 Mo. 431, it was held that a county court may compromise and settle a judgment in favor of the county and against a taxpayer for taxes, which judgment had been reversed and remanded; the court saying: "The power to sue implies the power to accept satisfaction of the demand sued for, whether the precise amount demanded or less. The taxes were levied for the benefit of the county. The beneficial interest was in the county, and it is for the public interest that she should have the right to settle by compromise questionable demands which she may assert. Must the county prosecute doubtful claims at all hazards, regardless of costs and

expenses, and is it for the public good that the right to settle such demands by compromise be denied her? As was said by the Supreme Court of New York in the case of *Board of Supervisors* v. *Bowen,* 4 Lans. 31: 'It would be a most extraordinary doctrine to hold that, because a county had become involved in a litigation, it must necessarily go through with it to the bitter end, and has no power to extricate itself by withdrawal or by agreement with its adversary.' The same doctrine was sanctioned in *Supervisors* v. *Birdsall,* 4 Wend. 453."

The statutes of Iowa defining the powers and authority of the board of supervisors are substantially in the same language as B. & C. Comp. § 912, subd. 9, relating to county courts. It was held that the board of supervisors, if acting in good faith, had authority, under the powers thus conferred, to compromise a judgment in favor of the county for taxes, although the taxpayer was solvent and the judgment had become final (*Collins* v. *Welch,* 58 Iowa, 72, 12 N. W. 121, 43 Am. Rep. 111), and to compromise a pending action against the county for alleged services by conveying to the claimant certain swamp land belonging to the county (*Grimes* v. *Hamilton County,* 37 Iowa, 290), and to contract with a person to procure title to the county from the government to swamp lands, and, as compensation therefor, to have a part of the lands so secured: *Allen* v. *Cerro Gordo County,* 34 Iowa, 54. The statute of South Dakota declares that the board of county commissioners "shall superintend the fiscal affairs of the county and secure their management in the best manner." From this statutory injunction it was held implied authority was granted to dispose of and sell, in good faith and for value, outstanding, overdue and uncollectible promissory notes belonging to the county; the court saying: "The board, being charged exclusively with the management of all fiscal affairs pertaining to the county, has authority, unless restricted by the legislature, to do that which the county might perform if an entity and capable of rational action; and the proposition carries with it authority to compromise in an honest manner a disputed or doubtful claim in favor of or against the municipality: *State* v. *Davis,* 11 S. D. 111 (75 N. W. 897, 74 Am. St. Rep. 780). Such authority is an incident to official capacity and

the power to institute, prosecute, and defend suits": *Brown County* v. *Jenkins,* 11 S. D. 330 (77 N. W. 579). Bearing more or less directly upon this question, and tending to support the conclusions indicated, the following cases are cited: *Board of Orleans County* v. *Bowen,* 4 Lans. 24; *Town of Petersburg* v. *Mappin,* 14 Ill. 193 (56 Am. Dec. 501) ; *Fitzgerald* v. *Harms,* 92 Ill. 372; *Agnew* v. *Brall,* 124 Ill. 312 (16 N. E. 230) ; *Board* v. *Saunders,* 17 Ind. 437; *Supervisors* v. *Birdsall,* 4 Wend. 453; *City of Buffalo* v. *Bettinger,* 76 N. Y. 393; *McCredie* v. *City of Buffalo,* 2 How. Prac. (N. S.) 336; *O'Brien* v. *Mayor,* 40 App. Div. 331 (57 N. Y. Supp. 1039) ; *Woods* v. *Supervisors of Madison County,* 136 N. Y. 403 (32 N. E. 1011). From these authorities—and there seem to be none to the contrary—it is clear that, under the various provisions of the statute, the board of commissioners had power to make the compromise agreement or settlement sought to be canceled and annulled in this suit, unless some of the arguments of plaintiff hereafter noticed are sound.

5. It is insisted that the power given a county court by B. & C. Comp. § 912, subd. 10, to compound for and release in whole or in part, any debt or damages resulting out of a contract due the county, is equivalent to an implied denial of the power to compromise or settle any controversy or dispute arising in any other way. This position is grounded on the familiar rules of interpretation of statutes and contracts—that the expression of one thing excludes any other. This is a mere rule of interpretation, and, as said by Mr. Broom in his work on Legal Maxims (8 ed. *653) : "Great caution is requisite in dealing with it, for, as Lord Campbell, Ch., observed in *Saunders* v. *Evans,* it is not of universal application, but depends upon the intention of the party as discoverable upon the face of the instrument or of the transaction. Thus, where general words are used in a written instrument, it is necessary, in the first instance, to determine whether those general words are intended to include other matters besides such as are specifically mentioned, or to be referable exclusively to them, in which latter case only can the above maxim be properly applied." Mr. Endlich says, Endlich, Interp. Stat. § 398:  "If there is

such a rule, it is confessedly liable to so many restrictions and exceptions in its application as to be practically swept away. Indeed, the extreme caution necessary in its application is emphasized wherever it is recognized by writers." Whether the expression of one thing in a statute is to operate as an exclusion of all others is a mere question of intention, to be ascertained by the usual means and rules of interpretation. For this purpose the maxim invoked becomes important. "It means," says Mr. Endlich, "that the special mention of one thing indicates that it was not intended to be covered by a general provision which would otherwise include it" (Section 399), and, "as applied to the construction of statutes, certainly cannot mean that, where one thing is allowed or named, every other thing is forbidden or excluded": Section 397. The rule may be applied in cases where there is a bare enumeration of powers, without any provision conferring a general power. For example, if there was no general power conferred upon the board of county commissioners in relation to the management and control of the fiscal affairs of the county, it might be said that the law giving them authority to compromise or compound a certain character of controversies would be equivalent to an intention of the legislature to exclude the power to compromise all other cases. But the powers given by Section 2518 and by Subdivision 9 of Section 912 are so broad as to clearly indicate that the legislature never intended to confine the cases in which the county courts might settle and adjust controversies between the county and other persons to the narrow limits mentioned in Subdivision 10 of Section 912. To deny the county court or the board of commissioners this right or power would be to deprive them of authority to act in numerous instances where the best interests of the county would be subserved, and require them to pay unjust and invalid claims against the county, or defend to a final conclusion all suits or actions brought against the county, without regard to the probability of a successful termination thereof, and contrary to its best interests. It is not to be supposed that the legislature intended so to circumscribe and restrict the powers of the county court in the management of the general fiscal and business affairs of the county.

6. It is also contended that the board of county commissioners had no authority to make any compromise in regard to the tax certificates, because they included taxes of other corporations— notably, the City of Portland, the Port of Portland and the school district. The law of 1893, authorizing the county judge to buy in property at delinquent tax sales, declares that when so purchased it will become the property of the county, subject to redemption, as provided by law. By such a purchase the county acquires an interest in or liens upon the property for the taxes assessed against it (*Berger* v. *Multnomah County,* 45 Or. 402, 78 Pac. 224), and we think it holds the same in trust to account to the other interested corporations for their proportions or shares of the taxes realized therefrom. The ownership of the interest and lien acquired by the purchase is, however, entirely vested in the county, and any disposition made of it or any redemption is placed exclusively under its control. This is a rational view of the act of 1893, and is the one given it by the subsequent act of 1901, which it was held in *Berger* v. *Multnomah County,* 45 Or. 402 (78 Pac. 224), was an important aid in ascertaining the intention of the legislature in the passage of the former act.

7. Again, it is claimed that the provision in the act of 1893 that the land purchased by the county shall be "subject to redemption as provided by law" is an effectual limitation upon the power of the county to deal with the tax certificates in any way except to allow a redemption, and denies to a taxpayer the right to settle or compromise with the county and relieve his property from the effect of the sale in any way other than by such redemption, however doubtful or uncertain the validity of the tax proceedings may be. We cannot agree in this view. It seems to us that the plain purpose of the clause referred to was to preserve to the taxpayer the right of redemption, and not to limit or restrict the powers of the county court or of the tax-payer to deal with the tax certificate. The statute provides that, upon the purchase of the land, it shall become the property of the county; and, without some provision as to redemption by the taxpayer, his rights to the property would probably be completely barred by the sale. The redemption clause was intended for his

benefit, and to give him a specific time after the sale in which to become repossessed of his property by redemption, but it does not prevent him from compromising or settling a dispute as to the validity of such sale or tax proceedings with the county authorities.

For these reasons, the decree of the court below will be reversed, and the complaint dismissed.        REVERSED.

Decided 12 June, rehearing denied 17 July, 1905.